Abraham N. Geller, J.
A hearing has been held on the motion made by all five defendants to suppress the articles taken by *115 the police out of the automobile of defendant Delvitt. The indictments charging the several defendants with various counts of grand larceny, criminally buying and receiving stolen property, and criminally concealing and withholding stolen and wrongfully acquired property, were consolidated for the purpose of this motion. Defendants offered no evidence of their own but based their contention as to the alleged illegality of the procurement of the seized articles on their legal interpretation of the testimony given by the participating police officer, though questioning his credibility in some respects.
The undisputed testimony is that the attention of police officers on night patrol was attracted to three men walking along the curb of Vanderbilt Avenue near 46th Street and looking at the parked cars; that they saw one of the men kick in the window of the door of one of the cars, open the door and start to get into the car; and that they immediately apprehended and arrested these men. No question is raised concerning the authenticity of this occurrence. The police officer gave the names of these men and testified that they were subsequently charged with attempted grand larceny. Defendants’ counsel conceded “ that the officer had cause to arrest the man who broke into the car.” Thus, there is no claim in this case that entry into defendant Delvitt’s car was obtained by trickery or subterfuge or that the incident starting the chain of events resulting in the seizure of incriminating evidence was a fictitious pretext.
The officer testified that, looking in through the side window of the car, he saw what appeared to be a number of packages or bulky articles, only partially covered by the type of blanket used in a moving van. He decided that, for the purpose of safeguarding this property in view of its vulnerability to theft by reason of the broken window, as well as for the purpose of holding it, at least until claimed by the owner, as evidence against the persons arrested, it should be taken to the precinct. A policeman was requested by the patrolling officers to await the owner’s return, and to inform him to claim the property at the precinct. Since circumstances might arise to require the policeman to leave the immediate scene, it was deemed necessary to bring the property to the precinct.
Such action on the part of police officers is reasonably embraced within the Rules and Regulations of the Police Department of the City of New York, setting forth their duties with respect to property to be held in custody, such as lost, stolen of abandoned property or property required as evidence ór taken from a prisoner, etc. Though this precise situation does not appear to be referred to in the Rules and Regulations, it is *116 clearly a valid exercise of a proper police function to protect property when rendered unsafe by force of circumstances.
The officer testified that, when he leaned over the front seat after opening the door, he could see that one of the packages was an open case without a cover or top, containing three or four dissimilar bottles of liquor. All of the articles were removed and taken to the precinct. In addition to this open case, there were two portable television sets, two stands apparently belonging to the television sets, and miscellaneous canned food in two-gallon cans. After he arrived at the precinct, he saw in open view, ‘1 under the lights of the house,” that the liquor bottles in the open case had white labels stating “ Bar 1 ” or “ Bar 2 ’ ’ pasted on them.
Since this was a hotel district, the officer came to the conclusion that these miscellaneous bottles of liquor came from two bars of a hotel apparently designated for inventory purposes as Bar 1 and Bar 2. This circumstance, joined with the fact that the ease was an open one, would indicate to an experienced officer that the bottles had been taken from two hotel bars, and in combination with the remaining miscellaneous collection of articles in the car, constituted reasonable ground for a police officer to believe that they were stolen property or “ fruits ” of a crime and therefore proper subjects for further investigation. That investigation is claimed to have confirmed the fact that all of these articles had been stolen from the Hotel Biltmore and to have allegedly implicated each of the five defendants in various aspects of the crimes involved.
The court finds from the undisputed and credible evidence that entry and accessibility to and possession of the articles in question were lawfully gained by the police, even though— unfortunately for defendants — these may have been the product of a wholly unexpected and fortuitous event unrelated to the crimes herein involved. It is further found and determined that here there was no search or prying into the contents of articles, which would represent an interference with the rights of citizens not warranted by the mere circumstance that their property had accidentally fallen into the possession of the police. The indicia of stolen property, particularly the “ Bar 1” and “ Bar 2” labels on the three or four miscellaneous bottles in the uncovered case, were in open view for a police officer to observe. The plainly visible circumstances went beyond mere suspicion and constituted reasonable grounds for his belief that a crime was being committed. He was not required to ignore it, to blind himself to what was in plain sight simply because it was not related to the purpose for which police action was taken, nor *117 was he compelled impotently to stand aside and refrain from taking appropriate action (cf. Harris v. United States, 331 U. S. 145; United States v. Lefkowitz, 285 U. S. 452; Paper v. United States, 53 F. 2d 184).
The Constitution forbids only unreasonable searches. If recognizable contraband or fruits or instrumentalities in open view in the street or in a place lawfully entered by the police without any element of trespass or fraudulent invasion of the rights of citizens are found by the police, this is not a search but a seizure, and nothing in the Constitution inhibits the seizure of property, the possession of which constitutes a crime.
In United States v. Jankowski (28 F. 2d 800), officers, stopping a car to notify the driver to fix flickering lights, saw bottles of whiskey in the car. It was then illegal to transport liquor in violation of the National Prohibition Act (41 U. S. Stat. 305). The court said (p. 802): “ This version of what occurred shows no illegal search, nor, indeed, any search at all.” It pointed out that the purpose for stopping the car was to enforce observance of State laws and regulations, not to make an unlawful search for contraband liquor, discovery of which was incidental and obtained without any search.
Similarly, in United States v. Charles (8 F. 2d 302), it was held that contraband in plain view could be seized by officers, though unrelated to the crime for which an arrest was being made. The court was careful to distinguish between a search and a seizure under these circumstances. It was said that, while the officers could not take advantage of their presence in the premises to make a search for such unrelated contraband, they were not required to shut their eyes to readily visible evidence of other crimes, seizure of which was not only legal but mandatory.
Since, in this case, the police gained entry into defendant Delvitt’s car and took possession of the articles therein for a legitimate purpose, and in the course thereof, without conducting a search, observed stolen property or “ fruits ” of a crime, they had the right and, indeed, the duty to seize it and conduct an investigation with respect thereto. Defendants have adduced no evidence to contradict the officer’s testimony either as to the incident leading to the taking of the property to the precinct or as to the condition and appearance of the articles in question. The court finds the officer’s testimony credible, and therefore determines that the entry was not effected by trickery, subterfuge or pretext, that the property was rightfully taken to the precinct, and that no element of an unreasonable search was involved in the seizure of recognizably stolen property in plain view.
*118 In view of this determination of the basic issue, it becomes unnecessary to pass on the question of alleged lack of “ standing ” of defendants other than Delvitt. Standing of these other defendants to make the motion would be lacking under the Federal rule as stated in Jones v. United States (362 U. S. 257), that, with respect to any crime other than a charge of possessing contraband, some proprietary or possessory interest in the property seized or legitimate right to be in the premises searched must be claimed by the movant. It may be observed, however, that standing under our recent statute (Code Crim. Pro., § 813-c) may be construed by our courts to extend to any defendant a claiming to be aggrieved ‘and’ having reasonable grounds to believe that the property * * * may be used as evidence against him in a criminal proceeding, ’’ the intendment of which may be held to be broader than that of subdivision (e) of rule 41 of the Federal Rules of Criminal Procedure, limiting standing to ‘ ‘ a person aggrieved by an unlawful search and seizure ’ ’ (see People v. Smith, 35 Misc 2d 533). The motion to suppress is denied.