477 P.2d 122 (1970)
Robert John CROKER, Appellant (Defendant below),
v.
The STATE of Wyoming, Appellee (Plaintiff below).
No. 3847.
Supreme Court of Wyoming.
November 20, 1970.
*123 T.A. Fennell, Cheyenne, for appellant.
James E. Barrett, Atty. Gen., Richard A. Stacy, Asst. Atty. Gen., Cheyenne, for appellee.
Before GRAY, C.J., and McINTYRE, PARKER, and McEWAN, JJ.
Mr. Chief Justice GRAY delivered the opinion of the court.
The defendant, Robert John Croker, was charged with the possession of a narcotic drug, to wit marijuana, in violation of the provisions of § 35-350, W.S. 1957, and upon trial to the district judge, sitting without a jury by consent of the parties, was found guilty of such charge. Judgment was entered accordingly and defendant appeals, contending first that the district judge erred in denying his motion to suppress certain evidence obtained as the result of a search of his home made by the police pursuant to a search warrant and admitted over his objection at the trial, and secondly that the affidavit in support of the warrant was deficient in several respects.
The salient facts with respect to these contentions are substantially undisputed. The defendant, with his wife, resided on the premises described as 860 North Tenth Street, Laramie, Wyoming. The premises upon which a dwelling had been constructed bordered Tenth Street on the east and an alley on the north. The garbage cans in question were covered by a lid and were located some seven or eight feet from the northwest corner of the dwelling inside a wooden picket fence enclosing the backyard of the premises but near a small gate bordering upon the alley which permitted ingress and egress from the alley. The garbage collectors for the city at regular intervals would enter the premises through the gate and empty the contents of the cans into "a large green plastic barrel" used for that purpose, which was deposited in a truck in the alley to be transported to the city dump. On or about February 16, 1969, the police department determined to place the garbage cans of the defendant under surveillance and asked the garbage collectors when collecting defendant's garbage on their regularly scheduled days not to dump the contents of their barrel into the truck but to turn it over to the officers in charge of the investigation. This was done on four separate occasions commencing on February 19, 1969, to and including March 1, 1969. An examination of the contents of the barrel by the officers was made at places off the premises occupied by the defendant and on February 19, 1969, plant stems and seeds of marijuana were discovered. On February 22, 1969, no marijuana was discovered. On February 26, 1969, a hand-rolled cigarette butt containing marijuana was discovered and on March 1, 1969, another cigarette butt containing marijuana and four marijuana seeds were discovered.
On March 5, 1969, Officer James Cooper of the Laramie Police Department filed with the justice of the peace an affidavit in support of a request for issuance of a search warrant relating, among other things, the items obtained as the result of the surveillance of defendant's garbage cans and attached thereto was a certified copy of the Official Laboratory Report of the Department of Agriculture stating that analysis disclosed the items to be marijuana. On that same day the justice of the peace, after determining from the affidavit that the showing made established "probable cause for believing that there is illegal marijuana concealed on said premises in the possession of the Defendants," issued a search warrant authorizing a search of the "dwelling house" situate upon the premises above described. It should here be pointed out that the items of marijuana obtained from defendant's garbage cans prior to issuance of the warrant were not introduced in evidence at the trial.
With respect to the foregoing circumstances, defendant makes the following contentions:
"* * * (1) that the garbage cans were within the curtilage of his residence; *124 they were within the area where he had a reasonable expectation of privacy; and therefore the garbage cans were within the constitutional guarantees against unreasonable search and seizure; (2) that the search of the garbage cans by the police officers without a warrant was unreasonable and unlawful; (3) that under the fruit of the poisonous tree doctrine, such unlawful search tainted all the evidence obtained after the search warrant was issued; and (4) that the admission of the articles seized after the search warrant was issued was prejudicial error requiring reversal of the trial court's judgment of conviction."
The State, on the other hand, contends that the contents of the garbage cans were abandoned; that the doctrine of "curtilage" and "protected area," if still viable, has no application to the facts in this case; that defendant had no reasonable expectation of privacy in his garbage cans; and that the doctrine of the "fruit of the poisonous tree" does not apply.
The contentions of the parties on this phase of the case, as is apparent, are directed at the provisions of the Fourth Amendment to the United States Constitution pertaining to searches and seizures and Article 1, § 4 of the Wyoming Constitution, which with one exception not involved here is identical to the Fourth Amendment. The able briefs of the parties have quite thoroughly discussed the intricacies and complexities of the law relating generally to searches and seizures and more particularly as they apply to the special circumstances of this case. We think, however, that the specific question before us on search and seizure requires no extensive review of the general authorities.
Conceding that the constitutional provisions apply to the investigatory stage of a case, Davis v. Mississippi, 394 U.S. 721, 89 S.Ct. 1394, 1397, 22 L.Ed.2d 676, it is our view that the contentions of the defendant must stand or fall upon the contention that the garbage cans "were within the area where he [defendant] had a reasonable expectation of privacy," and that the police in their investigation violated that right.
In advancing the contention, the defendant assumes as his premise that because of the prior arrangement between the police and the garbage collectors the garbage collectors were acting throughout as the "alter ego" of the police. No authority is cited to sustain that assumption as a matter of law and in our view it is unsound. In State v. Hiteshew, 42 Wyo. 147, 292 P. 2, 5, where Federal prohibition officers had cooperated with State authorities in a search of premises for unlawful possession of intoxicating liquor, we rejected a similar argument on the basis that if the acts of the Federal officers were lawful the fact that they cooperated with the State officers did not make their acts unlawful per se and thus vitiate the State court conviction. Likewise in the case of Abel v. United States, 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668, rehearing denied 362 U.S. 984, 80 S.Ct. 1056, 4 L.Ed.2d 1019, which involved cooperation between two separate departments of the Federal government, it was held that this was not improper when done in good faith. We think the rationale of Lewis v. United States, 385 U.S. 206, 87 S.Ct. 424, 426, 17 L.Ed.2d 312, rehearing denied 386 U.S. 939, 87 S.Ct. 951, 17 L.Ed.2d 811, is also not without significance wherein the court said:
"Both petitioner and the Government recognize the necessity for some undercover police activity and both concede that the particular circumstances of each case govern the admissibility of evidence obtained by stratagem or deception. * * *"
Hence defendant's contention must be resolved in the light of existing circumstances.
To elaborate somewhat on the general statement of the salient facts set forth above and specifically directed to the extent of the cooperation by the garbage collectors with the police, Officer Cooper testified that the collectors "were asked *125 to pick up the garbage on their regularly scheduled collection date in their regular collection container" and were then further "instructed not to dump their container into the truck but to turn it over to us immediately at the west end of the alley in the 900 block in which the house was located." With the exception of the pickup which was made February 19, 1969, when the contents of defendant's garbage cans were turned over to the police at another location, the arrangement between the two arms of the city government was carried out. That was the extent of the garbage collectors' participation in the police surveillance. They made no search either on or off the premises and as can be seen were not instructed to make such a search and did nothing more upon the defendant's premises than they were licensed to do and which they regularly did in removing defendant's garbage from his premises.
Under those circumstances, and as we analyze the evidence, the trial court was not in error when it impliedly found by its order denying defendant's motion to suppress that no invasion of defendant's right of privacy occurred. Even assuming under the rationale of Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576, and Work v. United States, 100 U.S.App.D.C. 237, 243 F.2d 660, and the holding in People v. Edwards, 71 Cal.2d 1096, 80 Cal. Rptr. 633, 458 P.2d 713, that defendant did have a reasonable expectation of privacy to the contents of his garbage cans as long as the contents were on his premises it would be most unrealistic to hold that such reasonable expectation of privacy would reach beyond the confines of defendant's premises. It is our view that when defendant put his garbage in his garbage cans for purposes of removal he impliedly consented to entry upon his premises by the garbage collectors in the regular performance of their duties and to the removal of the garbage by them to the alley, which was open to the public. At that time the officers or anyone else, if the garbage collectors did not object, were free to examine the contents of the collectors' barrel.
The circumstances here are somewhat analogous to the circumstances considered in State v. Purvis, 249 Or. 404, 438 P.2d 1002, 1004, where the court held that an arrangement made by a police officer with the maids of a hotel for examination of the "trash" from a room occupied in the hotel by an accused did not constitute an unlawful search by the police. It was there said:
"* * * as we interpret the evidence, the trial court was entitled to regard the direction given to the maids as limited to the removal of items which would otherwise be removed in the normal process of cleaning the room."
Subsequently Purvis commenced a habeas corpus proceeding in the Federal court, Purvis v. Wiseman, D.C.Or., 298 F. Supp. 761, advancing the same contentions made in the State court and Chief Judge Solomon, after pointing out that Purvis impliedly consented to the invasion of his privacy by the maids for the purpose of "removing trash" but did not consent to a search, at 763 said this:
"A search, as distinguished from a mere entrance to clean, involves an intent `to go through and examine for the purpose of finding or ascertaining something.' Webster's New International Dictionary (2d ed. unabr.) In other words, a search entails a process of differentiating between objects with an intent to locate a particular object.
"If the maids believed they were expected to remove any homemade cigarettes, wherever located, and whether or not trash, they searched the room. If, on the other hand, they understood that they were expected to remove only those homemade cigarettes that would be removed in the normal process of cleaning the room, their entrance was consensual."
Applying that test to the circumstances in the matter before us, it is clear that no search was made. The only inference that could be drawn from the evidence was that *126 the invasion of defendant's privacy by the garbage collectors in the regular performance of their duties did not go beyond the defendant's consent. Consequently defendant's contention that the evidence obtained by the search authorized by the search warrant was tainted under the doctrine of the "fruit of the poisonous tree" has no merit. The doctrine is not here applicable.
Turning now to defendant's attack on the sufficiency of the affidavit of Officer Cooper in support of the request for issuance of the warrant, it is noted that in the first two paragraphs thereof it was stated:
"That he is a Police Officer of the City of Laramie, Wyoming, and as such, is authorized to make searches and seizures; That he is familiar with marijuana and has had experience in detecting, recovering and apprehending marijuana and persons suspected of using and possessing same.
"That Robert John Croker has been known to officers of the Laramie Police Department as a user and possessor of marijuana prior to October 30, 1968; That the records of the Laramie Police Department, Laramie, Wyoming, reflect that on October 30, 1968, at 9:15 p.m., the above-named defendants Robert John Croker and Carol Jean Croker, were arrested by officers of the Laramie Police Department in Laramie, Wyoming, for possession of marijuana and had in their possession and control approximately 179 gms. of marijuana as shown by the attached copy of Report Nos. 903264  903272, both inclusive, of State of Wyoming Department of Agriculture Official Laboratory Report."
This was then followed by a recital of the results of the examination of defendant's garbage on the four days set forth above and among other things stated that on two of these occasions the affiant together with Officer Spriggs examined the garbage of the defendant and on the two other occasions Officer Spriggs examined the contents. Affiant then went on to state that he had observed and was familiar with the premises located at 860 North Tenth Street and related the results of his investigation of the records of the county assessor's office and the Northern Gas Company, all showing or tending to show that the defendant was the occupant of the said premises. Affiant then stated that if the foregoing facts were true "and affiant verily believes they are true," these facts "will, and do, constitute a violation" of the law of Wyoming "in that it constitutes illegal possession of a narcotic drug, to-wit: marijuana." It was then requested that a search warrant be issued directing him "to search the above-described premises, and anybody found therein, for the above-described illegal drugs, to-wit, marijuana, believed by your affiant to be concealed therein."
Aside from the contention with respect to the search which was an integral part of defendant's attack and which we have determined to be without merit, it is contended as a general proposition that the affiant, Officer Cooper, "had no personal knowledge of any facts on which the justice of the peace could base a finding of probable cause that appellant was committing a crime on March 5, 1969, by having marijuana in his possession." Such contention is then supplemented by the further contention (1) that affiant's statement that defendant was "known to officers of the Laramie Police Department as a user and possessor of marijuana prior to October 30, 1968" had no probative value in determining probable cause that defendant possessed marijuana in his home on March 5, 1969; (2) that the records of the Laramie Police Department divulge no personal knowledge of affiant respecting such arrest and possession; and (3) that the reports of the Wyoming Department of Agriculture of the 1968 incident were too remote in time and did not identify defendant with the premises here involved.
Keeping in mind that the charge here was for possession and not sale, we find *127 no merit in plaintiff's contentions. We are cognizant of course of fairly recent holdings of the United States Supreme Court that a finding of probable cause by the justice of the peace can be satisfied by "hearsay information" providing the affidavit sets forth sufficient of the "`underlying circumstances' necessary to enable the magistrate independently to judge of the validity of the informant's conclusion that the narcotics were where he said they were." Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 587, 21 L.Ed.2d 637. In United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 745, 13 L.Ed.2d 684, the court, after first pointing out that even though a warrant may be issued only upon a finding of probable cause, also pointed out that the term meant something less than evidence which would justify condemnation and further that such finding might "rest upon evidence which is not legally competent in a criminal trial." The court then went on to say, 85 S.Ct. at 746, that such affidavits "must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion" and further that:
"* * * Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting.
"This is not to say that probable cause can be made out by affidavits which are purely conclusory, stating only the affiant's or an informer's belief that probable cause exists without detailing any of the `underlying circumstances' upon which that belief is based. * * *"
With respect to defendant's general assertion that the affiant had no personal knowledge of the facts set forth in the affidavit, we think that to the contrary the affidavit, particularly with respect to the facts concerning the examination of defendant's garbage, is more than sufficient. He had personal knowledge that marijuana was recovered on two separate occasions. In addition, the affidavit is clear that he was informed of the examination made of the garbage by Officer Spriggs on March 1, 1969, which revealed "a hand-rolled cigarette butt and four seeds which appeared to be marijuana," and even though such examination might have been hearsay it was a proper circumstance to be considered by the justice of the peace. Information obtained by a fellow officer engaged in a common investigation is "a reliable basis for a warrant applied for by one of their number," United States v. Ventresca, supra, 85 S.Ct. at 747. See also Brooks v. United States, 5 Cir., 416 F.2d 1044, 1048, and the comment of Circuit Judge Burger (now Chief Justice of the United States Supreme Court) in Smith v. United States, 123 U.S.App.D.C. 202, 358 F.2d 833, 835, certiorari denied 386 U.S. 1008, 87 S.Ct. 1350, 18 L.Ed.2d 448, to the effect that "The correct test is whether a warrant if sought could have been obtained by law enforcement agency application which disclosed its corporate information, not whether any one particular officer could have obtained it on what information he individually possessed."
With respect to point 1, it is true of course that in Spinelli, supra, it was said that a bare conclusion such as we have here that an accused was "known to the police as a user and possessor of marijuana prior to October 30, 1968" standing alone is of no probative value. Here, however, the statement was buttressed by a summary of what the records of the police department reflected, which as already indicated was proper. No doubt it was inserted to strengthen the affiant's belief that defendant was over a long period a user and possessor of marijuana, but in any event in view of the other facts reflected it can be treated as a gratuitous statement which is not shown to have prejudiced the defendant.
What we have previously said concerning use of the records of the police department *128 in support of affiant's belief sufficiently disposes of defendant's point 2.
With respect to point 3 concerning reports of the results of examinations made by the Department of Agriculture, we would first point out that such reports are admissible under the provisions of § 1-166, W.S. 1957, in the trial of a case if relevant and upon the laying of a proper foundation. That being true, it can scarcely be said that the department's certified reports were not reliable for the purpose of determining probable cause and certainly they were relevant to affiant's belief that defendant was "a user and possessor of marijuana."
Something is said about the time lapsing from the dates of the incidents related in the affidavit and the issuance of the warrant. We see no merit in this contention inasmuch as the information obtained by the affiant as a result of the police surveillance alone was sufficient ground for issuance of the warrant and that information was sufficiently current. Coury v. United States, 6 Cir., 426 F.2d 1354, 1355; People v. Hawthorne, 45 Ill.2d 176, 258 N.E.2d 319, 321; State v. Spicer, Or. App., 473 P.2d 147, 150.
We find no reversible error and the judgment is affirmed.
Affirmed.