John McCUTCHEON, Appellant
(Defendant below),

v.

The STATE of Wyoming, Appellee
(Plaintiff below).

No. 5139.

Supreme Court of Wyoming.

Dec. 21, 1979.

Rehearing Denied Jan. 14, 1980.

Richard H. Honaker, Appellate Counsel, Wyoming Public Defender Program, Cheyenne, and Harry G. Bondi, Deputy Public Defender, Casper, for appellant.

John D. Troughton, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., Crim. Div., Douglas J. Moench, Jr., Legal Intern, and Michael Huber, Deputy Pros. Atty., Natrona County, for appellee.

Before RAPER, C. J., and McCLINTOCK, THOMAS, ROSE and ROONEY, JJ.

ROSE, Justice.

Appellant, John McCutcheon, was charged with burglarizing the Roadrunner Cafe in Casper, Wyoming, on September 7, 1978, in violation of § 6–7–201(a)(i), W.S.

1977, with burglarizing the garage of Casper policeman Bill Millay on September 3, 1978, also in violation of § 6–7–201(a)(i), W.S.1977, and with concealing stolen goods in violation of § 6–7–301, W.S.1977.

The Roadrunner Cafe burglary charge (District Court Criminal Action No. 7714), and the Millay garage burglary and concealing stolen goods charges (District Court Criminal Action No. 7738) were consolidated for trial.

Appellant's counsel moved to suppress evidence allegedly obtained pursuant to illegal searches and seizures under the Fourth Amendment of the Constitution of the United States, and Article 1, Section 4, of the Wyoming Constitution. That motion was heard and denied. The evidence was received at trial, and appellant was convicted of two counts of burglary and sentenced to two concurrent terms of five to eight years in the Wyoming State Penitentiary.

This appeal addresses the trial court's denial of appellant's motions to suppress illegally seized evidence. The evidence appellant objected to at trial and objects to on appeal includes all the evidence received which relates to the Millay burglary, Criminal Action No. 7738, together with the admission in Criminal Action No. 7714 of photographic exhibits of food items seized while officers were acting under the authority of a search warrant.

We will affirm.

At about noon on September 4, 1978, Casper policeman Bill Millay discovered that his garage had been broken into and several items, including a bench grinder, a car stereo and tape, two radios, and two car speakers had been taken sometime the previous day. On September 6, 1978, one of Millay's neighbors told him that he had seen "four or five kids" in a black Pontiac or Oldsmobile with a square taillight and no license plates, and that he heard one of the "kids" say, "Man, did we hit it big, we found a garage and its [sic] got tape players and everything in it."

On the following day, September 7, 1978, Millay searched for a car matching this description. About noon, he observed and followed a black Pontiac proceeding along a Casper street and "crept up on his bumper and noticed a set of speakers in the back window similar to mine." Millay traced the temporary license sticker on the car and found that it belonged to the appellant, John McCutcheon. Officer Millay then informed Casper Police Department Investigator John Snell "that he had seen some speakers in the rear deck of a vehicle" registered to John McCutcheon of 1960 Johnstone Road.

John McCutcheon and his father, Joe McCutcheon, were working on John's black Pontiac that same afternoon of September 7, 1978, and, when the McCutcheons, together with April Garner, left the vehicle at about 6:30 p. m. to go to a store and buy a set of brakes, the automobile was parked in the driveway at 1960 Johnstone Road.

Snell testified that, "In an attempt to obtain further information," he and Investigator James H. Cooper arrived at 1960 Johnstone Road at about 7:00 p. m., and walked onto the McCutcheon premises.

The appellee describes what happened next as follows:

" . . . Officer Snell proceeded up the driveway of the residence to ascertain whether anyone was at home. Enroute, he observed the speakers through the back windows of the black Pontiac, and the tape deck through the side windows . . ."

The appellant describes the happening in this manner:

" . . . They [Investigators Snell and Cooper] walked onto the McCutcheon premises, looked into the vehicle parked in the driveway, and saw a car stereo . . . and two speakers . . . in the vehicle . . ."[1]

---

1. Because the circumstances under which the officers observed the items in the vehicle are important to the validity of the conclusion that

we reach in this opinion, the pertinent testimony is set out as follows:

"[Snell testified on direct examination at one point in the proceeding:]"

Appellant, his father, and April Garner returned shortly after the arrival of Snell and Cooper, and at about the same time Police Officers Glenn Cashel and Dan Hodge appeared at 1960 Johnstone Road. Officer Snell testified that appellant gave him permission to enter and examine the items in the car after he, Snell, had informed appellant of his constitutional rights, including the admonition that he did not have to permit the police to search the vehicle. Shortly thereafter, appellant signed a written permission for the officer to search the residence.

Upon receiving appellant's permission, Investigator Snell entered the vehicle, inspected and tentatively identified the speakers and car stereo, and called Officer Millay to come to 1960 Johnstone Road to identify those items. Millay entered the vehicle "after I found out there had been a permission to search the vehicle" and examined and identified the car stereo and speakers as those which were taken from his garage.

"Q. Could you tell us what you observed and where you observed it?

"A. I observed a, I believe, a K-Mart eight track tape deck and a set of speakers in the back of a—or in a white over black Pontiac vehicle that had a temporary sticker in it and parked in the driveway at 1960 Johnstone Road.

"Q. And was there anything obstructing your view of those items when you saw them, or could you just tell us, describe to us how it was that you saw them?

"A. I could see the speakers, which were on the rear deck of the vehicle. I could see them both through the back windows. I could see the tape deck, which was mounted to the left of the steering wheel, beneath the dashboard. I could see that from the driver's side window and also from the passenger's side window.

"Q. Would it be fair to say those were open to anyone, in plain view that was outside the vehicle?

"A. They were."

When the subject was inquired into again on direct examination, Officer Snell testified:

"A. On September 7th, I received information from Bill Millay, who is the complainant in this case—

"Q. Would that be the same Bill Millay who testified here earlier today?

"A. It was. And he informed me that he had seen some speakers in the rear deck of a vehicle, it was a black over white Pontiac

The trial court denied appellant's motions to suppress the admission of the car stereo and speakers at trial on the grounds that the evidence was in plain view and that appellant had voluntarily consented to a search of the vehicle.

The remainder of the evidence received was obtained pursuant to a search warrant issued by a justice of the peace September 7, 1978. The affidavit in support of that search warrant was signed and sworn to by Investigator Dan Hodge and stated the following:

"On 9–7–78, Investigator of the Casper Police Dept. located an eight track tape player and two speakers in the vehicle of John McCutheon [sic] at 1960 Johnston [sic] Road, which were taken in a Burglary on 9–3–78. Investigators talked to April Garner who was with McCutheon [sic] and she stated to Officers that she was present during the burglary on 9–3–78 and that two of the items taken in the

that had temporary sticker in it and he further informed me that he had contacted the office in Cheyenne and found out that, who this vehicle was registered to, that it was registered to John McCutcheon of 1960 Johnstone Road, and that evening other officers and I went out to 1960 Johnstone Road in an attempt to obtain further information.

"Q. And could you tell us what happened or what you observed upon arriving at 1960 Johnstone Road?

"A. Upon arriving at that time I observed a white over black Pontiac, I believe it is a Tempest, in the driveway of 1960 Johnstone Road. The vehicle, the back of the vehicle was on jacks and, I believe, the trunk lid was open. As I was going to the house to ascertain whether anybody was at the residence or not a vehicle, another vehicle pulled into the driveway.

"Q. Did you ever make it up to the house?

"A. I don't believe I did at that time."

Officer Cooper, who accompanied Snell to 1960 Johnstone Road, testified on direct:

"Q. What did you do at the time when you got to 1960 Johnstone?

"A. We went to, we looked at the vehicle, this Pontiac that was in the yard and looked through the window at the tape deck, that was in the car, plus the speakers that were mounted in the rear deck of the vehicle, and then we tried to contact someone at the house by going to the door and ringing the doorbell."

burglary are located at 528 West 9th,Apt9, [sic] Casper, Wy. She stated that on 9–7–78 she observed the portable eight track tape player, Montgomery Wards [sic] brand, which was taken in the Burglary, at that residence. She also stated that within the last five days she also observed the Shop Mate Grinder which was on a shelf in the closet at 528 9th, Apt.9 This Affiant wishes a night time warrant on the grounds that any delay in searching 528 West 9th Apt.9 might enable occupants to destroy or get rid of these items taken in the burglary when the occupants find out John McCuthion [sic] is in custody of the Casper Police Dept."

By motions to suppress, filed in both Criminal Actions Nos. 7738 and 7714, appellant alleged that the search warrant was invalid and that all evidence seized by its authority should be suppressed. The motions were denied.

The appellant delineates the issues for our decision as follows:

"1. Does the plain view doctrine excuse the search of Appellant's vehicle?

"2. Does a police Officer 'search' a vehicle when he walks up a private driveway, peers into the vehicle, and visually examines the contents thereof?

"3. Does a prior illegal search render a subsequent consent to a further search involuntary?

"4. If the search of Appellant's vehicle was illegal, was a subsequent apartment search conducted pursuant to a warrant also illegal as an exploitation of the prior illegal search?

"5. Will this Court adopt a 'citizen informant rule,' and if so, will the Court require an affidavit supporting a search warrant to affirmatively establish the status of an informant as a 'citizen informant'?"

*Response to Issues Numbers 1 and 2*

We respond to issues 1 and 2 by holding that the visual observation of the evidentiary items while the vehicle was in the driveway was not a constitutional search and therefore not prohibited. In so holding, we view the evidence and reasonable inferences to be drawn therefrom most favorably to the successful party. *Johnson v. State,* Wyo., 562 P.2d 1294, 1297 (1977), quoting from *Blakely v. State,* Wyo., 542 P.2d 857, 863 (1975), and *Harris v. State,* Wyo., 487 P.2d 800, 801 (1971), and citing, in further support, *Bentley v. State,* Wyo., 502 P.2d 203, 208 (1972).

The United States Supreme Court, other state courts, and this court have held that a police officer's observation of that which is in plain view from a position where he has a right to be is subject to seizure and may be introduced in evidence. *Harris v. United States,* 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968); and *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564, rehearing denied 404 U.S. 874, 92 S.Ct. 26, 30 L.Ed.2d 120 (1971). See, also, *Lorenzana v. Superior Court of Los Angeles County,* 9 Cal.3d 626, 108 Cal.Rptr. 585, 511 P.2d 33 (1973), rehearing denied. We said in *Alcala v. State,* Wyo., 487 P.2d 448, 453 (1971):

"We consider it well settled that objects falling into the plain view of an officer who has a right to be where he is are subject to seizure and may be introduced in evidence. *Belondon v. City of Casper,* Wyo., 456 P.2d 238, 241; *Harris v. United States,* 390 U.S. 234, 88 S.Ct. 992, 993, 19 L.Ed.2d 1067; *State v. McMillan,* 206 Kan. 3, 476 P.2d 612, 616.",

and footnoted still other citations for this proposition, which citations are: *State v. Camper,* Mo., 353 S.W.2d 676, 679; *People v. Manzi,* 38 Misc.2d 114, 237 N.Y.S.2d 738, 741; *People v. Willard,* 238 Cal.App.2d 292, 47 Cal.Rptr. 734, 743; and *State v. Allred,* 16 Utah 2d 41, 395 P.2d 535, 537.

Fully developed, the elements required for plain-view justification, according to *Coolidge, supra,* are:

1. The officers' presence must be proper.

2. The items observed must appear to the officer to be possible evidence.

3. Attention must be paid to Justice Stewart's plurality expression that

the "plain view" doctrine is applicable only to the *inadvertent* discovery of incriminating evidence.[2]

### The Officers' Presence Must Be Proper

■ Responding to the first *Coolidge* plain-view justification test, we find that Officer Snell's presence was proper in that he was in a place where he had a right to be and where the defendant had no reasonable expectation of privacy when Snell observed the speakers and the tape deck in the automobile as it was parked in the defendant's driveway. See, *Croker v. State,* Wyo., 477 P.2d 122 (1970). In support of this conclusion, we rely upon the following testimony: Snell went to the property without a warrant and was "going to the house to ascertain whether anybody was at the residence . . . in an attempt to obtain further information." (See, Fn. 1) Admittedly, it is not crystal clear from the record just exactly where in the driveway the vehicle was parked and where the house was with respect to the driveway and the automobile, but we must, nonetheless, give the State the benefit of the favorable facts and all reasonable inferences to be drawn therefrom (*Johnson; Blakely; Harris and Bentley, supra*). Through the application of this rule, we think we can fairly read the record to say that Officer Snell was walking up the driveway upon which the car was parked and it was necessary to pass the automobile on his way to the house to speak with the occupant for the purpose of gaining additional information about the burglaries. While in pursuit of this purpose, the officer observed the speakers and tape deck through the windows of the vehicle. (See, fn. 1.) If we are warranted in embracing these facts and their attendant inferences, it follows that Snell was in a place where he had a right to be when he looked into the automobile and saw the evidentiary items. *People v. King,* 5 Cal.App.3d 724, 85 Cal.Rptr. 461 (1970); and *Lorenzana, supra.* Furthermore, under these facts, Snell was in a place where the defendant had no reasonable expectation of privacy.[3]

The California Appellate Court found there was no reasonable expectation of privacy which would defeat the plain-sight doctrine where the officer stood on the steps leading to the side door through which illegal activity was observed. *People v. Willard,* 238 Cal.App.2d 292, 47 Cal.Rptr. 734 (1965)—nor was there reasonable expectation of privacy where the officers entered upon a common passageway bordering defendant's apartment where the court said they had a right to be and from there observed contraband through the curtains. *People v. Berutko,* 71 Cal.2d 84, 77 Cal.Rptr. 217, 453 P.2d 721 (1969). The same was true where, from the back yard, where deliverymen and others come, the officer observed a plant which proved later to be marihuana.

One commentator has described our feelings on the subject rather vividly:

> "It is a fair generalization that if a law enforcement officer is able, by the use of his natural senses, to discover what is inside a vehicle while 'standing in a place where he had a right to be' this discovery does not constitute a Fourth Amendment search." LaFave, *Search and Seizure: A Treatise on the Fourth Amendment,* Sec. 2.5(c), p. 355.

### To Invoke The Plain-view Doctrine, The Items Viewed Must Appear To Be Possible Evidence

■ In further compliance with the requirements of *Coolidge,* the record clearly

---

2. It is not possible to describe the *Stewart* pronouncement on inadvertent discovery as a rule of law because the Associate Justice was unable to obtain a majority of the court for this proposition.

3. This conclusion serves to distinguish the case of *United States v. Bradshaw,* 4 Cir., 490 F.2d 1097 (1974), cited by appellant to support his expectation-of-privacy argument. *Bradshaw* facts indicated a 'search' because of the peering through a crack in the rear doors of a vehicle which were closed at the time, thereby raising some expectation of privacy. Clearly, the transparent windows of appellant McCutcheon's vehicle do not raise the expectation of privacy that closed, nonwindowed doors did in *Bradshaw.*

indicates the officers' recognition of the tape deck and speakers as possible evidence. Officer Snell recognized the brand names of these items and Officer Cooper stated that he and Snell noted them as being evidentiary. The officers had been alerted to these items by Officer Millay, and, moreover, Officer Cooper testified that he had driven around in the police car where the items had been installed prior to being removed and placed in Millay's garage.

### The Stewart Inadvertent-discovery Rule

In *Coolidge, supra,* Associate Justice Stewart, writing for a plurality, was of the opinion that the "plain view" doctrine is applicable in circumstances where the discovery of incriminating evidence is *inadvertent.*

In *North v. Superior Court of Riverside County,* 8 Cal.3d 301, 104 Cal.Rptr. 833, 502 P.2d 1305, 1309 (1972), the California Supreme Court said:

"It follows that the 'plain view' issue raised by the plurality opinion was in fact considered by an equally divided court, and hence was not actually decided in *Coolidge.* (See *People v. McKinnon,* supra, 7 Cal.3d [899] at p. 911, 103 Cal.Rptr. [897] at p. 905, 500 P.2d [1097] at p. 2005.) As stated in *McKinnon,* involving a different aspect of the *Coolidge* plurality opinion, 'under settled doctrine, the judgment of an equally divided United States Supreme Court "is without force as precedent." [Citation.] . . .'"

Even so—it is well to point out here that the viewing of the articles in question through the glass in the automobile did in fact conform to Justice Stewart's *inadvertence test* for identifying "plain view."

After pointing to several situations in which the "plain view" doctrine is applicable, Justice Stewart says:

". . . Finally, the 'plain view' doctrine has been applied where a police officer is not searching for evidence against the accused, but nonetheless inadvertently comes across an incriminating object. *Harris v. United States,* 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067; *Frazi-*

*er v. Cupp,* 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684; *Ker v. California,* 374 U.S. [23] at 43, 83 S.Ct. [1623] at 1635, 10 L.Ed.2d 726. Cf. *Lewis v. United States,* 385 U.S. 206, 87 S.Ct. 424, 17 L.Ed.2d 312." *Coolidge, supra,* 403 U.S. at 466, 91 S.Ct. at 2038.

While we can conceive of cases in which inadvertence would be an unnecessary requirement because the accused had left the evidence at some place where intrusion was necessary and where the accused had no claim to any right of privacy, this case is not one of those.

The cited cases seem to have in common the fact that the officer must have a prior justification for the intrusion, during which he comes across the evidence incriminating the accused.

Does that factor appear here? We think it does. The evidence which the judge could, and we assume did, believe was that Officer Snell was proceeding along the driveway on his way to the house of McCutcheon to "ascertain whether anybody was at the residence . . . in an attempt to obtain further information," (Snell's testimony, *supra,* fn. 1) when he passed the car and saw the incriminating evidence through the vehicle's window and in plain view. The "further information" which the officer was seeking would have been such information as was in addition to that which he had previously received from Officer Millay. Therefore, Officer Snell was not searching for evidence as he proceeded up the driveway to the house, but was, instead, on his way to confront the occupants in the course of his investigation when, in passing the vehicle, he inadvertently came across the incriminating objects at a place where he had a right to be and where the defendant had no reasonable expectation of privacy. This conclusion assumes facts sufficient to support the assumption that the officers did not know with certainty the location of the property when they walked up the driveway toward the McCutcheon house. We find such facts to be supported by the record.

We conclude, then, that all of the *Coolidge* elements required for plain-view justification are present here and that the viewing of the evidentiary items in McCutcheon's automobile without a warrant, which led the officers to request permission to search the vehicle, was justified and did not constitute a Fourth Amendment search.

### Response To Issues Numbers 3 and 4

We respond summarily to issues numbered 3 and 4, *supra,* because those questions make an assumption which we reject. This assumption is that the *search* (Snell's looking into the automobile) was illegal. But we hold that his viewing the evidentiary articles in this manner did not constitute a constitutional search and was, thus, not "illegal." Therefore, this conclusion disposes of issues 3 and 4.

### Response To Issue Number 5, i. e., The Alleged Insufficiency of The Probable-cause Affidavit

Lastly, the defendant argues that the affidavit supporting the search warrant for defendant's sister's apartment was insufficient to establish probable cause in that the reliability of hearsay information contained therein was not established.

We said in *Croker, supra,* at 477 P.2d 127: ". . . We are cognizant of course of fairly recent holdings of the United States Supreme Court that a finding of probable cause by the justice of the peace can be satisfied by 'hearsay information' providing the affidavit sets forth sufficient of the ' "underlying circumstances" necessary to enable the magistrate independently to judge of the validity of the informant's conclusion that the narcotics were where he said they were.' *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 587, 21 L.Ed.2d 637. In *United States v. Ventresca,* 380 U.S. 102, 85 S.Ct. 741, 745, 13 L.Ed.2d 684, the court, after first pointing out that even though a warrant may be issued only upon a finding of probable cause, also pointed out that the term meant something less than evidence which would justify condemna-

tion and further that such finding might 'rest upon evidence which is not legally competent in a criminal trial.' The court then went on to say, 85 S.Ct. at 746, that such affidavits 'must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion' and further that:

" ' * * * Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting.

" 'This is not to say that probable cause can be made out by affidavits which are purely conclusory, stating only the affiant's or an informer's belief that probable cause exists without detailing any of the "underlying circumstances" upon which that belief is based. * * ' "

The affidavit with which we are concerned in the instant matter is set out verbatim, *supra,* and shows that the informant was an eyewitness to the burglary and to the place where the items which were taken were located. In urging the insufficiency of the affidavit, the defendant admits that an affidavit supporting a search warrant may be based on hearsay where there is "a substantial basis for crediting the hearsay," *Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960) (a holding that we recognized and adopted in *Deeter v. State,* Wyo., 500 P.2d 68 (1972)). He argues that, in this case, there was no such credibility showing. The argument is:

". . . This [credibility] basis can be established by affidavits which disclose to the magistrate underlying circumstances that (1) caused the informant to conclude that the objects of the search are on the premises to be searched, and (2) caused the affiant to believe the informant is credible or his information is reliable. *Aguilar v. Texas,* 378 U.S. 108, 114, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).",

and the magistrate's reliance on the hearsay of April Garner does not satisfy the *Aguilar* tests. We think it does. We note, parenthetically, that we rejected this same argument in *Deeter, supra.*

We said in *Deeter, supra,* at 500 P.2d 70, and also repeated in *Smith v. State,* Wyo., 557 P.2d 130 (1976):

". . . [A]ffidavits of probable cause for search are to be tested by much less rigorous standards than those governing admissibility of evidence at the trial and issuing magistrates are not to be confined by niggardly limitations, *Spinelli v. United States,* 393 U.S. 410, 419, 89 S.Ct. 584, 21 L.Ed.2d 637, . . ."

The affidavit of Officer Hodge reflects sufficient " 'underlying circumstances' necessary to enable the magistrate independently to judge the validity of the informant's conclusion," *Spinelli v. United States, supra.* The affidavit informs the magistrate that the eight-track tape player and speakers taken in the burglary were recovered in McCutcheon's automobile at 1960 Johnstone Road at a time when April Garner appeared with McCutcheon and his father. That backdrop against which the hearsay statements of April Garner were said by the affiant to have been made was more than sufficient to satisfy the requirements of *Spinelli, supra; Jones v. United States, supra;* and *Aguilar, supra.*

We do not find it necessary to probe further into the ramifications of the so-called "citizen-informant" rule. The affidavit was sufficient for the reasons stated.

There being no other issues for decision, the judgment of the court is affirmed.

McCLINTOCK, Justice, dissenting.

I cannot join in this court's conclusion that the warrantless search of defendant's automobile parked in his driveway is "not a constitutional search [requiring Fourth Amendment protection] and therefore not prohibited," majority opinion at p. 540, nor can I agree that such a search falls within the plain-view doctrine. Defendant contends that the initial intrusion onto his property was improper and that there were no exigent circumstances to justify the warrantless search. I agree.

I acknowledge the fact that some courts have held that in its purest application the doctrine of plain view does not constitute a search as contemplated by the constitution, "but simply sanctions the admission of evidence consisting solely of testimony as to the observations of an officer legally in the position from which the observations were made." *Reeves v. State,* Alaska, 599 P.2d 727, 738 (1979). The search and subsequent seizure in the case at bar, however, do require Fourth Amendment protection. *Reeves, supra.*

The contested search was made without a warrant, and I therefore begin my inquiry with the proposition that "the most basic constitutional rule in this area is that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.' " *Coolidge v. New Hampshire,* 403 U.S. 443, 454–455, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564 (1971) (the plain-view exception); *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) (the consent exception); *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419, reh. denied 400 U.S. 856, 91 S.Ct. 23, 27 L.Ed.2d 94 (1970) (the automobile-exigency exception); *Warden v. Hayden,* 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967) (the hot-pursuit exception). If a search does not come within one of those recognized exceptions, the evidence obtained during the search must be excluded. *Mapp v. Ohio,* 367 U.S. 643, 657, 81 S.Ct. 1684, 6 L.Ed.2d 1081, 84 A.L.R.2d 933 (1961). And "[t]he burden rests on the State to show the existence of such an exceptional situation." *Vale v. Louisiana,* 399 U.S. 30, 34, 90 S.Ct. 1969, 1972, 26 L.Ed.2d 409 (1970).

The right to personal liberty has long been recognized by the United States Supreme Court. In *Boyd v. United States,* 116 U.S. 616, 630, 6 S.Ct. 524, 29 L.Ed. 746 (1886), also quoted in *Mapp v. Ohio, supra,*

367 U.S. at 646–647, 81 S.Ct. at 1687, the Court, in considering the Fourth and Fifth Amendments stated that these amendments

> ". . . apply *to all invasions on the* part of the government and its employes of the sanctity of a man's home and the privacies of life. It is not the breaking of his doors, and the rummaging of his drawers, that constitutes the essence of the offence; but it is the invasion of his indefeasible right of personal security, personal liberty and private property . . . ."

The Court also stated that "constitutional provisions for the security of person and property should be liberally construed," and that "[i]t is the duty of courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon." *Boyd,* supra, 116 U.S. at 635, 6 S.Ct. at 535. In the present case, this court has failed to protect Wyoming citizens from the "stealthy encroachments" of the police.

### I. Plain View

The majority opinion correctly sets forth the elements that are necessary for a finding of the plain-view exception in order to validate a warrantless search. However, I cannot agree that the State has met its burden in proving that the officers' presence was proper. In order to be proper the officers must have had some "legitimate reason for being present unconnected with a search directed against the accused." *Coolidge,* supra, 403 U.S. at 466, 91 S.Ct. at 2038. Nor can I find that the discovery of the evidence was inadvertent.[1]

Beginning as I must with the premise that a warrantless search is per se unconstitutional, I have failed to find any evidence supporting the majority's conclusion that the police were in a place where they had a right to be. This court bases this inference upon the theory that was suggested by the State in its appellate brief, rather than upon the record. Quoting from the State's brief, this court has set forth the State's version of the facts as follows:

> " '. . . Officer Snell proceeded up the driveway of the residence to ascertain whether anyone was at home. Enroute, he observed the speakers through the back windows of the black Pontiac, and the tape deck through the side windows . . . .' " Majority opinion at p. 538.

Adopting the State's version of the facts while purporting to make an independent finding based upon the record this court concludes:

> "*Admittedly, it is not crystal clear from the record* just exactly where in the driveway the vehicle was parked and where the house was with respect to the driveway and the automobile, but we must, nonetheless, give the State the benefit of the favorable facts and all reasonable inferences to be drawn therefrom [citations omitted]. Through the application of this rule, we think we can fairly read the record to say that Officer Snell was walking up the driveway upon which the car was parked and it was necessary to pass the automobile on his way to the house to speak with the occupant for the purpose of gaining additional information about the burglaries. While in pursuit of this purpose, the officer observed the speakers and tape deck through the windows of the vehicle. (See, fn. 1.) *If we are warranted in embracing these facts and their attendant inferences, it follows that Snell was in a place where he had a right to be . . . ."* (Emphasis added.) Majority opinion at p. 541.

I cannot agree that this court is required to view the facts most favorable to the State, giving every reasonable inference to

1. In footnote 2 of the majority opinion it is said that the element of inadvertence is not a rule of law because the decision in *Coolidge,* supra, was only supported by a plurality. While the California court appears to be reluctant to accept the need for inadvertence, *North v. Superior Court of Riverside County,* 8 Cal.3d 301, 104 Cal.Rptr. 833, 502 P.2d 1305, 57 A.L.R.3d 155 (1972), numerous other courts have followed the *Coolidge* decision. See, for example, *Reeves v. State,* Alaska, 599 P.2d 727, 738 (1979); *State v. Williams,* 55 Ohio St. 82, 377 N.E.2d 1013, 1016 (1978); *Bies v. State,* 76 Wis.2d 457, 251 N.W.2d 461, 464–465 (1977); and *United States v. McCormick,* 9th Cir., 502 F.2d 281 (1974).

these facts to support a finding that a per se unconstitutional search was proper. The State has the burden of proving the exceptional circumstance that warranted the intrusion and this court has a duty to review all of the evidence presented in cases that raise Fourth Amendment issues. I have previously said, in my dissent in *Fitzgerald v. State*, Wyo., 601 P.2d 1015, 1026, that when an appellate court is faced with a constitutional issue it is

> " '. . . required to examine the entire record and to make an independent, reflective constitutional judgment on the facts. *Davis v. North Carolina*, 384 U.S. 737, 741, 86 S.Ct. 1344, 16 L.Ed.2d 360 (1966); *Walker v. State*, 12 Md.App. 684, 280 A.2d 260 (1971).' *Whitman v. State*, 25 Md.App. 428, 336 A.2d 515, 519 (1975)."

However, even giving the State every favorable inference that can reasonably be drawn from the evidence in the record, I am still unable to find any testimony that warrants the inferences that have been drawn by the majority. There is no testimony indicating where the automobile was parked in the driveway, or the relationship of the driveway to the house. No officer testified that it was necessary for them to walk up the driveway past the automobile in order to reach the front door of the house. Nor is there any testimony to the effect that the officers originally went to McCutcheon's residence to question the occupants about the burglaries. And, finally, I cannot accept the majority's inference as to the sequence of the events. I will agree that the officers were on McCutcheon's driveway, they observed the speakers and tape deck in the automobile, and that as they were walking to the door to see if anyone was home, McCutcheon, his father and his girl friend arrived. However, there is no testimony to support the inference that the officers first observed the stolen property as they were going up to the front door of the house.

In arriving at these unwarranted inferences, the court in its opinion and the State in its brief have relied upon Officer Snell's testimony given at both the suppression hearing and the trial. Officer Snell described the search in the following manner during the suppression hearing:

"Q. Could you tell us what you observed and where you observed it?

"A. I observed a, I believe a K–Mart eight track tape deck and a set of speakers in the back of a—or in a white over black Pontiac vehicle that had a temporary sticker in it and parked in the driveway at 1960 Johnstone Road.

"Q. And was there anything obstructing your view of those items when you saw them, or could you just tell us, describe to us how it was that you saw them?

"A. I could see the speakers, which were on the rear deck of the vehicle. I could see them both through the back windows. I could see the tape deck, which was mounted to the left of the steering wheel, beneath the dashboard. I could see that from the driver's side window and also from the passenger's side window."

"Q. When you arrived at the premises was there anyone on the premises?

"A. I don't—yes, there was, but at the time I didn't realize it.

"Q. When did you determine that someone was present?

"A. What took place was we walked on to the premises, and the vehicle was setting in the driveway, was up on jacks, and I went to the door of the house to knock on the door, and before I had a chance to knock, Mr. McCutcheon and John McCutcheon drove up in another vehicle."

Officer Snell did not explain why the officers initially went to McCutcheon's residence, or how they happened to be on his private driveway. However, it is interesting to note that Officer Snell was apparently under the impression that no one was at home when the officers initially approached McCutcheon's residence.

Officer Snell testified again at the trial and he made the following statements concerning the search of defendant's automobile:

"A. * * * And he [Officer Millay] informed me that he had seen some speak-

ers in the rear deck of a vehicle, it was a black over white Pontiac that had temporary sticker in it and he further informed me that he had contacted the office in Cheyenne and found out that, who this vehicle was registered to, that it was registered to John McCutcheon of 1960 Johnstone Road, and that evening other officers and I went out to 1960 Johnstone Road in an attempt to obtain further information.

"Q. And could you tell us what happened or what you observed upon arriving at 1960 Johnstone Road?

"A. Upon arriving at that time I observed a white over black Pontiac, I believe it is a Tempest, in the driveway of 1960 Johnstone Road. The vehicle, the back of the vehicle was on jacks and, I believe, the trunk lid was open. As I was going to the house to ascertain whether anybody was at the residence or not a vehicle, another vehicle pulled into the driveway.

"Q. Did you ever make it up to the house?

"A. I don't believe I did at that time." (The majority has quoted this testimony in footnote 1 of the opinion.)

While the majority has inferred that "an attempt to obtain further information" means that the officers were on their "way to the house to speak with the occupant for the purpose of gaining additional information about the burglaries," I cannot find support for such a broad inference in the record.

Officer Snell stated that he looked at the vehicle and when he was on the way to the door someone arrived. Moreover, the majority has failed to consider the testimony of Officer Cooper who was also present at the McCutcheon residence, and whose testimony supplies the time sequence not covered by Snell's testimony. Cooper testified during the suppression hearing:

"Q. There were four officers approached the premises at the same time?

"A. Yes, sir, that is correct.

"Q. What did you do at the time when you got to 1960 Johnstone?

"A. We went to, we looked at the vehicle, this Pontiac that was in the yard and looked through the window at the tape deck, that was in the car, plus the speakers that were mounted in the rear deck of the vehicle, and then we tried to contact someone at the house by going to the door and ringing the doorbell.

"Q. Did you raise anyone at the house?

"A. On our approach to the house a car drove up and in the car, I believe there was Mr. McCutcheon, John McCutcheon and April Garner."

In light of Officer Cooper's testimony that they "went to" and "looked at" the automobile, I cannot see how the majority has concluded that the officers were merely passing by the automobile on their way to the front door of the house when they observed the stolen property. The majority has not only drawn an incorrect inference, they have drawn an inference contrary to the specific testimony of Officer Cooper, the only officer who testified as to the sequence of events. The State has failed to prove that the officers had a right to be on defendant's driveway.

Furthermore, the discovery of the evidence must be inadvertent. After the burglary, Millay's neighbor informed him that he had seen a black Oldsmobile or Pontiac with square tail lights and no license plates in the vicinity of Millay's garage on the day of the break in. After this conversation Officer Millay observed an automobile matching his neighbor's description. While the car was stopped at a traffic light Millay observed a set of speakers similar to those that were stolen on the rear deck of the car. Millay made a note of the temporary license sticker number, obtained the owner's name and address and then relayed this information to Snell.

Snell did not attempt to obtain a search warrant, nor was the failure to do so explained during the suppression hearing or at trial. The only fair inference is that the officers wanted to examine this particular car for the particular purpose of locating the stolen speakers. Because of this, I can-

not find that the discovery of the stolen property was inadvertent.

Moreover, plain view in and of itself is not sufficient to justify a search. As the United States Supreme Court stated in *Coolidge*, supra, 403 U.S. at 468, 91 S.Ct. at 2039,

".  .  .  plain view *alone* is never enough to justify the warrantless seizure of evidence. This is simply a corollary of the familiar principle .  .  . that no amount of probable cause can justify a warrantless search or seizure absent 'exigent circumstances.' "

See also, *State v. Sauve*, 112 Ariz. 576, 544 P.2d 1091 (1976).

### II. Exigent Circumstances

In the case at bar there were no exigent circumstances to justify the warrantless search of defendant's automobile. McCutcheon's automobile on jacks with at least one tire removed was parked on his driveway. The officers knew that McCutcheon owned the automobile and that most likely the vehicle contained stolen property. One of the officers could have easily obtained a search warrant while the other officers watched the automobile. *Sauve*, supra, 544 P.2d at 1092.

In *Sauve*, the Arizona Supreme Court held that a warrantless search of an automobile that was parked on defendant's driveway was not justified. The officers could not rely upon the doctrine of plain view and there were no exigent circumstances that could justify the search. When the detectives arrived at Sauve's home, he had already been charged and was incarcerated. The detectives were looking for a television channel changer and believed that it was in the defendant's car. The court held "[t]here was no justification for the seizure without a warrant, and the resulting evidence was not admissible." 544 P.2d at 1093.

While the majority has pointed to the fact that the decision in *Coolidge*, supra, was only subscribed to by a plurality, Mr. Justice Harlan concurred with the plurality in Parts I, II–D and III. Portions of Part II–D are relevant to the present inquiry.

"[A] search or seizure carried out on a suspect's premises without a warrant is *per se* unreasonable, unless the police can show that it falls within one of a carefully defined set of exceptions based on the presence of 'exigent circumstances.' " 403 U.S. at 474–475, 91 S.Ct. at 2042.

"Since the police knew of the presence of the automobile and planned all along to seize it, there was no 'exigent circumstance' to justify their failure to obtain a warrant. The application of the basic rule of Fourth Amendment law therefore requires that the fruits of the warrantless seizure be suppressed." 403 U.S. at 478, 91 S.Ct. at 2044.

The only difference in the present case is that we have no direct testimony that the officers had specifically intended to seize defendant's automobile or its contents.

### III. Expectation of Privacy

The majority further holds that McCutcheon had no reasonable expectation of privacy in his driveway. The following observation is made:

"Snell was in a place where the defendant had no reasonable expectation of privacy." (Majority opinion at p. 541.)

Once again, I cannot agree with this conclusion of law. In discussing the question of expectation of privacy, the United States Supreme Court in *Katz v. United States*, 389 U.S. 347, 350, 88 S.Ct. 507, 510–511, 19 L.Ed.2d 576 (1967), made the following statement:

"In the first place, the correct solution of Fourth Amendment problems is not necessarily promoted by incantation of the phrase 'constitutionally protected area.' Secondly, the Fourth Amendment cannot be translated into a general constitutional 'right to privacy.' That Amendment protects individual privacy against certain kinds of governmental intrusion, but its protections go further, and often have nothing to do with privacy at all. Other provisions of the Constitution protect personal privacy from other forms of governmental invasion. But the protection

of a person's *general* right to privacy—his right to be let alone by other people—is, like the protection of his property and of his very life, left largely to the law of the individual States."

No authority is cited supporting the majority's conclusion that McCutcheon had no reasonable expectation of privacy in his driveway, nor have I discovered any other court that has made such a general holding. The Ninth Circuit Court of Appeals has described the expectation of privacy in a driveway in the following manner:

> "A driveway is only a semiprivate area. The expectation of privacy which a possessor of land may reasonably have while carrying on activities on his driveway will generally depend upon the nature of the activities and the degree of visibility from the street. It would be equally unwise to hold, as a matter of law, that all driveways are protected by the Fourth Amendment from all penetrations by police officers as to hold that no driveway is ever protected from police incursions. The test in each case should be that of reasonableness, both of the possessor's expectations of privacy and of the officers' reasons for being on the driveway." *United States v. Magana*, 9th Cir., 512 F.2d 1169, 1171 (1975).

Accepting the test set out in *Magana* the question is whether the officers' intrusion onto McCutcheon's private driveway constituted an invasion of an area that McCutcheon sought to preserve as private. As the majority has correctly concluded, "[a]dmittedly, it is not crystal clear from the record just exactly where in the driveway the vehicle was parked and where the house was with respect to the driveway and the automobile." Majority opinion at p. 541. In fact, there is no evidence in the record as to the location of the driveway in relationship with the house. The State has thus failed to present facts from which the court could make a determination as to expectation of privacy. Therefore the State has not met its burden in proving the reasonableness of the officers' intrusion onto defendant's private driveway. *Coolidge*, supra, 403 U.S. at 455, 91 S.Ct. 2022.

## IV. Consent to the Search

Relying upon the plain-view doctrine to support the search and seizure, this court has not found it necessary to discuss the issue of whether McCutcheon voluntarily consented to a search of his automobile. Since I cannot accept the finding of plain view, I must address the question of whether McCutcheon voluntarily consented to a search, thereby removing the taint of the unlawful search.

Under the "fruit of the poisonous tree" doctrine, evidence that is the direct or indirect product of an illegal search is excluded if

> " '. . . the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' Maguire, Evidence of Guilt, 221 (1959)." *Wong Sun v. United States*, 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963).

The Supreme Court of California has long recognized the rule that

> "consent induced by an illegal search or arrest is not [voluntary], and that if the accused consents immediately following an illegal entry or search, his assent is not voluntary because it is inseparable from the unlawful conduct of the officers." *Burrows v. Superior Court of San Bernardino County*, 13 Cal.3d 238, 118 Cal. Rptr. 166, 174, 529 P.2d 590, 598–599 (1975).

The California court there held that the defendant's consent to search his car was the product of an unlawful search of his office and was therefore involuntarily given. The court then suppressed the evidence that was taken from Burrows' automobile.

The question of whether the consent is voluntary is to be determined from the totality of the circumstances. *Schneckloth v. Bustamonte*, supra. In the case at bar, McCutcheon testified that when he returned home one of the car doors was open and the officers were standing around his

automobile. The officers stated that at this time they had already looked inside the automobile. When defendant was asked if the officers could search his vehicle he informed them that they had already searched the car. I cannot find, therefore, that McCutcheon's statement to go ahead and look was a voluntary consent that purged the illegality of the initial intrusion. His consent to the search was a mere acquiescence to lawful authority inseparable from the illegal search and cannot be considered as a voluntary consent. *State v. Little*, 249 Or. 297, 431 P.2d 810, 812, cert. denied 390 U.S. 955, (1967); *Burrows*, supra, 118 Cal.Rptr. 166, 174–175, 529 P.2d at 598–599.

I would reverse and remand the case for further proceedings.

