Michael Lincoln McDERMOTT,
Appellant (Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 93–53.

Supreme Court of Wyoming.

March 9, 1994.

340

Wyoming Public Defender Program: Leonard D. Munker, State Public Defender; Deborah Cornia, Appellate Counsel, Cheyenne; and Donald L. Fuller, Casper, for appellant.

Joseph B. Meyer, Atty. Gen., Sylvia Lee Hackl, Deputy Atty. Gen.; Barbara L. Boyer, Sr. Asst. Atty. Gen.; and Mary Beth Wolff, Asst. Atty. Gen., for appellee.

Before MACY, C.J., and THOMAS, CARDINE, GOLDEN and TAYLOR, JJ.

THOMAS, Justice.

Following his conviction on multiple charges arising out of a forcible kidnapping followed by heinous sexual assaults, Michael Lincoln McDermott (McDermott) presents as primary issues in this appeal an unlawful search and the doctrine of merger, as it relates to the crimes of sexual assault and aggravated kidnapping, and as it relates to the crimes of aggravated assault and first degree sexual assault. In addition, McDermott asserts error in the failure to rearraign him after the information was orally amended to charge aggravated kidnapping and, relying upon *Walker v. State,* 847 P.2d 542 (Wyo.1993), the failure to name the victim in the information. We hold no reversible error is present in this case, and the judgment and sentence of the trial court is affirmed.

In his Brief of Appellant, McDermott frames the issues in this way:

I. Whether the evidence obtained during the search of Appellant's vehicle should have been suppressed as it was obtained without a warrant, and does not fall within the "plain view" exception to the warrant requirement?

II. Whether the crime of sexual assault merges with the crime of aggravated kidnapping when the sexual assaults are the sole aggravating factor used to enhance the kidnapping charge?

III. Whether upon oral amendment to the information charging Appellant with a greater offense than that he was arraigned on mandates that Appellant receive a new arraignment on the amended information?

IV. Whether an incorrect jury instruction on the elements of aggravated kidnapping, absent objection, becomes the law of the case, and whether under the law of the case, the evidence is sufficient to support a conviction for aggravated kidnapping?

V. Whether the crime of aggravated assault merges with the crime of first degree sexual assault when the aggravated assault is used to elevate the sexual assault to first degree?

VI. Whether the criminal complaint, warrant, and information in this case were fatally defective from the time they were filed as they failed to list the name of the victim?

The State of Wyoming, restates the issues, reducing the number to two as follows:

I. Whether the search warrant was based on sufficient probable cause?

II. Whether the evidence, information and jury instructions sufficiently supported the seventeen separate charges for which appellant was convicted and sentenced?

McDermott's victim was a twenty-five year old female [hereinafter referred to as T] who worked as a cocktail waitress at the Wigwam Lounge in downtown Cheyenne. T normally worked from 5:00 P.M. until closing time, which was anywhere between 2:00 and 3:00 A.M., depending on how many customers were in the lounge on any given night. On March 19, 1992, T arrived at the lounge for her normal shift, and she parked her pickup truck directly south of the Wigwam Lounge in the city parking lot across Sixteenth Street. After cleaning up and closing the lounge, T left at approximately 2:20 or 2:25 A.M. on March 20, 1992, and went to her vehicle across Sixteenth Street. When she unlocked the door to her truck, T noticed a car turning into the parking lot. As T started to get into her truck, the car pulled up perpendicular to her truck, and a man (who turned out to be McDermott) got out and yelled at her. T got into the driver's seat of her truck and rolled down the window. McDermott, still standing by the open door of his car, then asked her the time.

T told McDermott that it was 2:30 A.M., rolled up her window, and started her truck. She got out of her vehicle to scrape the windshield, and she saw that McDermott had started to drive away. Subsequently, T observed McDermott behind her truck where he was hopping along the side of his car with the door open in an effort to stop it. At that juncture, T became apprehensive and started to get back in her truck. McDermott walked up to within three or four feet of her, produced a .22 caliber revolver from his pocket, which he pointed at her, and demanded that she get in his vehicle. At first, T refused, and McDermott then jammed the barrel of the revolver into her chest, threatening to shoot her if she didn't get in his car. He then grabbed her and started pulling her towards his car. She continued to struggle, and he hit her on the head with the gun. At that juncture, the cylinder fell out of the revolver, and T tried, but failed, to get the gun and cylinder away from McDermott. McDermott then turned off the ignition of T's truck, shut the driver's door, and pocketed her keys. He began dragging T back to his car. In a futile attempt to avoid getting in, T grabbed the back door handle. McDermott then repeatedly pounded her on the face. T was injured and bleeding when she acquiesced and got into McDermott's car.

McDermott then drove to a secluded area north of the Happy Jack Road and parked his car in front of a railing near a pond. It is uncontroverted T was kidnapped, subjected to two instances of aggravated assault, and

forced to submit to fourteen sexual assaults. After the last of the sexual assaults, McDermott drove back to town. A number of police cars were in the parking lot next to T's pickup, and McDermott then released her a few blocks away from the parking lot. T was bleeding profusely as she got out of McDermott's car and walked back to the parking lot. T recounted her ordeal to the police officers gathered in the parking lot, describing McDermott and his car in detail. She then was taken to the hospital for treatment of her injuries and for the gathering of evidence related to the sexual assaults. After T was released from the hospital, at approximately 10:00 A.M. on March 20, she accompanied police officers to the site of the sexual assaults, and then gave a detailed statement to officers of the Laramie County Sheriff's Department.

T was able to describe her attacker as an Hispanic-looking male, approximately five feet, six inches to five feet, seven inches in height, with a fairly thin build, short dark hair, and brown eyes. She also described a round tattoo on her attacker's shoulder and a five-to-six inch scar on his abdomen. T said he had been wearing blue Wranglers, a red and white checked western shirt, and black tennis shoes. T also listed various items she had seen in the car that night including a WIC (Women, Infants and Children) folder on the dash, a piece of letterhead with "Wyoming Eagle" on it, a three-ring spiral notebook, and an empty pint chocolate milk carton.

By 4:30 P.M. on the same day, the Sheriff's Department had identified McDermott as a possible suspect. T had examined a photographic lineup and, even though she could not positively identify McDermott as the perpetrator, she recognized his eyes as the ones belonging to the individual who had attacked her. Later in the evening, T accompanied police officers in a "drive-by" to determine if she could recognize the car situated in the driveway at 4612 East 10th Street, where McDermott lived. T could not be positive that she was assaulted in that particular car, but she told the officers that "it could be."

At about 8:00 P.M., after they had taken T home, the same police officers decided to contact McDermott at the East 10th Street address. Two uniformed police officers went to the door to talk to McDermott, and a third officer walked by the car which was parked in the driveway. That officer observed a WIC folder and a three-ring binder lying on the dashboard. A fourth officer also observed the WIC folder in McDermott's car. At McDermott's request, the officers questioned him outside the house, near his car. McDermott said that he did own a knife, which was in the vehicle somewhere. When asked whether he had any identifying scars, marks, or tattoos, McDermott showed the officers the tattoo on his right shoulder and a five to six inch long scar running diagonally across his abdomen. At that time, the officers also noticed scratch marks on his right ribs.

In the meantime, McDermott's girlfriend, who was the owner of the East 10th Street house, agreed to answer questions inside her home. She pointed out to another officer the red plaid shirt, blue jeans, and black tennis shoes that McDermott had worn the night before, and these items were taken as evidence by one of the officers. The information obtained by the officers at that time confirmed what T already had told the officers about the knife, the clothing, specific items in the car, the abdominal scar, the tattoo, and possible scratch marks on her attacker.

The officers asked McDermott for permission to search his car, but he refused, stating he didn't want to be arrested for carrying a concealed weapon (the knife). McDermott also refused to accompany the police officers to the sheriff's department for additional questioning. At that time, the officers arrested McDermott, and search warrants for the house and the car subsequently were requested, obtained, and executed.

A criminal complaint was filed on March 22, 1992 in which McDermott was charged with two counts of aggravated assault, one count of kidnapping, and fourteen counts of first degree sexual assault. McDermott appeared in county court the next day, and the preliminary hearing was conducted on March

31, 1992. At that time, McDermott was bound over to the district court for trial. The information alleging the same seventeen crimes was filed in the district court on April 2, 1992. At his arraignment, McDermott entered pleas of not guilty and not guilty by reason of mental illness or deficiency to all counts.

The mental evaluations accomplished in connection with McDermott's plea of not guilty by reason of mental illness or deficiency disclosed he was competent to stand trial and, at a motion hearing held on September 28, 1992, McDermott's pleas were changed to pleas of not guilty. At that hearing, the information was orally amended, without any objection, to charge the kidnapping as an aggravated kidnapping because T had not been released by McDermott substantially unharmed. Also at that time, McDermott was granted a continuance of his trial for the purpose of determining whether his claimed amnesia made him incompetent to stand trial.

Further examinations confirmed McDermott was competent to stand trial, and the trial commenced on October 5, 1992, with the jury returning a verdict of guilty as to each of the seventeen counts on October 9, 1992. On January 11, 1993, McDermott was sentenced to a term of not less than twenty-five, nor more than fifty, years for the aggravated kidnapping and not less than three, nor more than five, years on each of the aggravated assault counts. His sentence on each of the counts of first degree sexual assault was not less than eight, nor more than nine, years, with those sentences to run consecutively, but to run concurrently with the sentences for the aggravated kidnapping and the aggravated assaults. McDermott's appeal is taken from that judgment and sentence.

■ In his first claim of error, McDermott contends the items of evidence observed in his car by the police officers while it was parked in his girlfriend's driveway do not fall within the plain view exception justifying a warrantless search, and any evidence taken from the car thereafter pursuant to the search warrant should be suppressed as "fruit of the poisonous tree." *See Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). McDermott overstates the facts in contending there was a warrantless search of his car. After the officers had seen the items in plain view in McDermott's car, in light of the other information available to them, they had ample probable cause to obtain a warrant to search the car and seize items of evidence. They did obtain a warrant to search the car, and nothing was seized until the warrant was executed.

■ A hasty analysis of constitutional principles is seldom fruitful. The constitutional parameters of search and seizure are articulated in the Fourth Amendment to the Constitution of the United States and in Article 1, Section 4, of the Wyoming Constitution.[1] When an officer lawfully occupies the vantage point from which he can observe possible evidence in plain view, there is no search, reasonable or unreasonable, proscribed by these constitutional inhibitions. *Horton v. California*, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990); *McCutcheon v. State*, 604 P.2d 537 (Wyo.1979). In such an instance, the constitutional protections are not infringed because there is no expectation of privacy with respect to those things left where they can be seen by anyone, or everyone. In *Horton*, 496 U.S. 128, at 133–34, 110 S.Ct. at 2306, the Supreme Court of the United States articulated the basic rationale:

The right to security in person and property protected by the Fourth Amendment may be invaded in quite different ways by searches and seizures. A search compromises the individual interest in privacy; a

---

1. The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
U.S. Const. amend. IV.

The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated, and no warrant shall issue but upon probable cause, supported by affidavit, particularly describing the place to be searched or the person or thing to be seized.
Wyo. Const. art. 1, § 4.

seizure deprives the individual of dominion over his or her person or property. *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984). The "plain-view" doctrine is often considered an exception to the general rule that warrantless searches are presumptively unreasonable, but this characterization overlooks the important difference between searches and seizures. If an article is already in plain view, neither its observation nor its seizure would involve any invasion of privacy. *Arizona v. Hicks*, 480 U.S. 321, 325, 107 S.Ct. 1149, 1153, 94 L.Ed.2d 347 (1987); *Illinois v. Andreas*, 463 U.S. 765, 771, 103 S.Ct. 3319, 3324, 77 L.Ed.2d 1003 (1983). A seizure of the article, however, would obviously invade the owner's possessory interest. *Maryland v. Macon*, 472 U.S. 463, 469, 105 S.Ct. 2778, 2782, 86 L.Ed.2d 370 (1985); *Jacobsen*, 466 U.S., at 113, 104 S.Ct. at 1656. If "plain view" justifies an exception from an otherwise applicable warrant requirement, therefore, it must be an exception that is addressed to the concerns that are implicated by seizures rather than by searches. (Footnotes omitted.)

When an officer's observation of items of evidence is made within the rationale relating to plain view, he may proceed to seize the evidence if there are exigent circumstances justifying the seizure. In *Jessee v. State*, 640 P.2d 56, 62–63 (Wyo.1982), this court articulated the rule that "plain view alone is not enough to justify warrantless seizure of evidence; exigent circumstances must also be present." Alternatively, the officer can obtain a warrant to search and seize based upon probable cause, which may include the observations previously made. The latter course was pursued by the officers in this case.

The only question remaining is whether the police officers had a right to be where they were when they saw the items of evidence in McDermott's car. In his brief, McDermott concedes the presence of the officers was proper when they went to the house to question him and his girlfriend on March 20, 1992, and the items the officers observed did appear to be possible evidence.

McDermott's argument is that there is "no logical reason, in light of the *McCutcheon* decision, why the inadvertent discovery rule would not apply." In *McCutcheon*, 604 P.2d at 540–41, we identified the following elements for plain view justification relying upon *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564, *reh'g denied*, 404 U.S. 874, 92 S.Ct. 26, 30 L.Ed.2d 120 (1971):

1. The officers' presence must be proper.

2. The items observed must appear to the officer to be possible evidence.

3. Attention must be paid to Justice Stewart's plurality expression that the "plain view" doctrine is applicable only to the *inadvertent* discovery of incriminating evidence.

*See also King v. State*, 780 P.2d 943 (Wyo. 1989); *Ortega v. State*, 669 P.2d 935 (Wyo. 1983).

In *McCutcheon*, we stated it was not possible to pronounce the requirement of inadvertent discovery as a rule of law in connection with the plain view doctrine because only a plurality of the Supreme Court affirmed application of this third element.

Since the *McCutcheon* decision, the Supreme Court of the United States has met this question dispositively, stating:

In this case we revisit an issue that was considered, but not conclusively resolved, in *Coolidge v. New Hampshire*, 403 U.S. 443 [91 S.Ct. 2022, 29 L.Ed.2d 564] (1971): Whether the warrantless seizure of evidence of crime in plain view is prohibited by the Fourth Amendment if the discovery of the evidence was not inadvertent. We conclude that even though inadvertence is a characteristic of most legitimate "plain-view" seizures, it is not a necessary condition. (Emphasis added.)

*Horton*, 496 U.S. at 130, 110 S.Ct. at 2304.

We hold the observation by the officers of the evidentiary items in plain view within McDermott's car on March 20, 1992, was accomplished pursuant to the plain view doctrine and in accordance with *Horton*. In this instance, no seizure followed the plain view. Any items seized from the vehicle pursuant

to the search warrant issued thereafter were legally obtained and were properly admitted at trial. McDermott's constitutional claim is patently invalid.

■ While the decision in *Horton* disposes of McDermott's contention, we also point out that the doctrines of "plain view" and "inadvertence" are not necessarily related. "Plain view" describes a situation in which an officer is lawfully present when he observes possible evidence without having to move anything in order to perceive the evidence. The obvious connotation of "plain view" is that the object is observable and not hidden. The court in *Horton* points out plain view can serve as an exception to justify warrantless search and seizure, or an officer may already possess a valid warrant to search for specific items of evidence and, during the course of his search, he may encounter other possible evidentiary items in "plain view." *Coolidge.* In such an instance, the lawfulness of the vantage point is justified by the search warrant that is being executed.

Turning then to the doctrine of "inadvertence," this rule is invoked when the officer, while engaged in a lawful search, discovers other possible evidence relating to the same crime; a different crime from that for which the warrant was issued; or different from the evidence he expected to find in connection with the search. It is not necessarily restricted to searches conducted pursuant to a warrant, but can be invoked in any instance in which the search being conducted by the officer is justified. For example, if probable cause and the exigent circumstances would justify an officer in searching a vehicle for controlled substances, a hand gun discovered in a place where the drugs could be hidden or found could be seized and used as evidence. Its discovery was "inadvertent." The doctrine implies that the discovery of the additional evidence in the course of a lawful search was not planned and was not anticipated.

The two doctrines are not interdependent because an officer who observes evidence in plain view may not be discovering that evidence inadvertently. He well may be looking for it in a place where he has reason to believe it would be found. The point, however, is that it is displayed for the world to see, and there is no invasion of any right of privacy normally associated with a search. *See Horton; King.*

■ We next address McDermott's claim of merger of the crimes of aggravated assault with first degree sexual assault. McDermott's contention is that the aggravated assault was the same conduct which elevated the sexual assaults to first degree. Since our decision in *Keffer v. State,* 860 P.2d 1118 (Wyo.1993), we invoke the statutory elements test to resolve the claim of merger. In *Keffer,* we stated with approval the statutory elements test from *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932):

> The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

*Keffer,* 860 P.2d at 1130.

It follows that, if the elements of a statutory offense make it separate and distinct from another offense, we presume the legislature intended to authorize separate punishments for both crimes. *DeSpain v. State,* 865 P.2d 584 (Wyo.1993).

■ In this case, the trial court instructed the jury with respect to the elements of the crime of aggravated assault and battery proscribed by WYO.STAT. § 6–2–502(a)(iii) (1988) as follows:

1. The crime occurred in Laramie County on or about March 20, 1992, and;

2. The defendant unlawfully and feloniously

3. Threatened to use

4. A drawn deadly weapon

5. Upon [T]

6. Which was not reasonably necessary in defence of his person property or abode or to prevent serious bodily injury to another.

In the next instruction the jury was told that the elements of sexual assault in the first

degree, proscribed by WYO.STAT. § 6–2–302(a)(i) (1988), are:

1. The crime occurred within the County of Laramie on or about the date of March 20, 1992; and

2. The defendant inflicted sexual intrusion on [T]; and

3. The defendant caused submission of [T] through the actual application of physical force or forcible confinement which was reasonably calculated to cause submission of [T].

At all times during the course of the sexual assaults, T either had her hands and feet tied, was bound and gagged, or she was being physically assaulted by being bitten or beaten. Any one of these events would serve to establish the third element of first degree sexual assault that requires either actual physical force or forced confinement, "reasonably calculated to cause submission of [T]." The element is established for all the counts of first degree sexual assault which were based upon separate sexual intrusions. *See Hamill v. State,* 602 P.2d 1212 (Wyo. 1979).

We note the claim of merger relates only to McDermott's producing a knife and threatening to use it while committing the third charged sexual assault, fellatio. The threat to use the knife is found only in the elements of aggravated assault and does not match the application of physical force or forcible confinement charged in connection with the sexual assaults. The State was required to prove an additional fact, *i.e.,* the threat to use the knife, that it was not required to prove in connection with the first degree sexual assault. The different elements result in a conclusion that, under these circumstances, the legislature intended to punish the crimes separately. We are satisfied the circumstances do not demand any merger of the aggravated assault charge with° the sexual assaults, and the State was justified in charging both of these offenses.

■ The same analysis under *Keffer* refutes McDermott's claim that the crimes of sexual assault merge with the crime of aggravated kidnapping. This record demonstrates, without equivocation, that McDer-

mott repeatedly struck T on the head with the revolver and his fists, severely injuring her, during his attempt to pull her into his car. That aggravated assault was charged as Count I of the criminal information, and it is not challenged in this appeal. In the course of that conduct, McDermott knowingly caused bodily injury to T with the revolver, which completed the crime of aggravated assault and battery under WYO.STAT. § 6–2–502(a)(i).

After that crime was completed, McDermott kidnapped T. Aggravated kidnapping was charged because McDermott removed T from the parking lot by force and with the intent to inflict bodily injury on, or terrorize, T, thereby satisfying the elements of WYO. STAT. § 6–2–201 (1988), which are, according to the instruction by the court:

The necessary elements of the crime of aggravated kidnapping are:

1. The crime occurred within the County of Laramie on or about March 20, 1992, and;

2. Michael Lincoln McDermott, defendant, did remove [T] from the vicinity where she was at the time of the removal or did confine [T];

3. With intent to facilitate the commission of a felony or inflict bodily injury on [T] and

4. That the defendant did not do any one of the following:

a. voluntarily release [T];

b. substantially unharmed; and

c. in a safe place

If you find from your consideration of all of the evidence that any of these elements has not been proved beyond a reasonable doubt, then you should find the defendant not guilty.

If, on the other hand, you find from your consideration of all of the evidence that each of these elements has been proved beyond a reasonable doubt, then you should find the defendant guilty.

The enhancement portion of the kidnapping statute provides:

(d) If the defendant does not voluntarily release the victim **substantially un-**

**harmed** and in a safe place prior to trial, kidnapping is a felony punishable by imprisonment for not less than twenty (20) years or for life except as provided in W.S. 6-2-101.

WYO.STAT. § 6-2-201(d) (1988) (emphasis added).

T was bleeding from the beating with the pistol and McDermott's fists when she finally got into his car. The jury could infer the crime of kidnapping was completed when T was confined in the car and removed from the parking lot. Certainly, the jury could infer T was removed with the intent to facilitate the commission of a felony or inflict bodily injury on her. If there actually had been no other injury, McDermott still would have been subject to the aggravating kidnapping charge. From the time T was injured with the revolver and by McDermott's assaults with his fists, to the point where she "saw stars" and was bleeding, it was not possible for McDermott to release her substantially unharmed.

■ It is clear from the foregoing recitation of the facts that there is no merit to McDermott's contention that "the sexual assaults are the sole aggravating factor used to enhance the kidnapping charge." Quite to the contrary, the force used to accomplish the kidnapping was sufficient justification to enhance the penalty, and it is separate and distinct from the force and confinement McDermott imposed upon T and the repeated sexual assaults in his vehicle. We hold this is not an instance that would demand merger of the sexual assaults with the independent crime of aggravated kidnapping. *See Hamill.* Furthermore, on the policy premise, we hold the legislature intended separate punishments for the crime of aggravated kidnapping and for the crime of sexual assault in the first degree because, once the sexual assault is inflicted, the victim has been harmed and cannot be released "substantially unharmed."

■ This brings us to the disposition of McDermott's claim in this appeal that the instruction given by the court to the jury on the elements of aggravated kidnapping was erroneous, but nonetheless became the law of the case. The focus of this contention is the instruction, quoted above, reciting the essential elements of aggravated kidnapping. This instruction, in part, is premised upon the language of WYO.STAT. § 6-2-201(d).

McDermott's argument is that the thrust of the court's instruction results in a requirement that all three of the factors had to be negated, and if McDermott did any one of those, such as voluntarily release T, the instruction advised the jury that aggravated kidnapping had not been proved.

In *Loomer v. State,* 768 P.2d 1042, 1046 (Wyo.1989), we stated:

The statute defines a single crime, kidnapping, which carries a sentence of 20 years to life but provides for a reduced sentence based upon defendant's conduct subsequent to the kidnapping. Thus, subsection (c) provides for a lesser sentence if four conditions are established: (1) the defendant voluntarily releases the victim, (2) substantially unharmed, (3) in a safe place, (4) prior to trial. **If any of these four conditions are not met, the lesser-sentence provision is not applicable.** (Emphasis added.)

It is clear this court treated subsection (c) as describing mitigating circumstances to justify a lesser sentence rather than as elements of the crime of kidnapping. Subsection (d) of the statute recites those same factors in the negative. When the court's instruction is read in light of *Loomer,* McDermott's argument must be rejected. While the language may not be artful, the court told the jury that, if McDermott failed to meet any one of the four conditions, the crime was to be treated as aggravated. McDermott admits T "was not released substantially unharmed," and we are satisfied the instruction was legally correct. McDermott was properly convicted of aggravated kidnapping.

■ McDermott also contends he was entitled to a new arraignment after the oral amendment of the information enhancing the potential punishment for kidnapping. McDermott was not prejudiced by what occurred and, consequently, no new arraignment was necessary. The amendment was accomplished during a motion hearing on September 28, 1992, when McDermott's at-

torney asked the court to clarify the kidnapping charge because he was not clear as to "which of the **sentencing** provisions the State is proceeding under." (Emphasis added.) As we noted above, WYO.STAT. § 6-2-201(c) refers to circumstances which may justify the imposition of the lesser sentence for kidnapping. When the oral amendment of the information was made, it conformed with WYO.R.CRIM.P. 3(d), which provides that an information may be amended "at any time before verdict or finding if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced." There was no charge of an additional or different offense and, in any event, there is no demonstrable prejudice to McDermott. He received a sentence of not less than twenty-five, nor more than fifty, years rather than the sentence that would be imposed if the mitigating circumstances were satisfied, but the kidnapping sentence is to run concurrently with the imposition of consecutive sentences aggregating 112 years for the sexual assault convictions.

■ The final argument we address is McDermott's claim that he was prejudiced by the failure of the State to name T as his victim in the criminal information. In *Walker*, 847 P.2d 542, 545, we stated:

> We are at a loss to locate persuasive authority or legal principles which would justify a holding by this Court that the victims' names may be left out of an information **and** then withheld from the defendant under such circumstances **as those presented here.** (Emphasis added.)

In our judgment, *Walker* is clearly distinguishable from this instance. In that case, the defendant had been charged with taking indecent liberties with two child victims. After repeated attempts during a four-month period by counsel to ascertain the names of "Jane Doe 1" and "Jane Doe 2," the names of the victims were disclosed on a confidential basis to counsel. The document in which they were disclosed, however, did not state which of the victims was "Jane Doe 1" and which was "Jane Doe 2." Without that information, Walker's ability to meet, defend, or refute the criminal allegations brought by the State based upon specific and sensitive facts

around each charged offense was affected to his detriment in a prejudicial manner.

The circumstances in *Walker* are not those we find present here. It is true T's name did not appear in the charging documents, but McDermott knew who the victim was. He named T in a Motion for Discovery he signed on July 15, 1992, and filed July 20, 1992, in which he requested that the State produce a copy of the "affidavit of the victim of the alleged incident, [T], which was sworn out during questioning by law enforcement officers." There was only one victim in this case and, obviously, McDermott knew who she was. Since McDermott had actual knowledge of the identity of the victim, there could be no prejudice to him because of the failure of the information to incorporate the victim's name. Consequently, we hold no error can be claimed under *Walker*.

To summarize, we are satisfied there was no infringement of the constitutional requirements relating to search and seizure in connection with the plain view of evidence in McDermott's vehicle and the subsequent seizure of that evidence pursuant to a search warrant. McDermott was convicted properly with respect to each of the seventeen separate charges, and the doctrine of merger need not be applied under the circumstances of this case. There was no prejudice to McDermott by the oral amendment of the information, and no need to re-arraign him. The instruction given with respect to the offense of aggravated kidnapping was correct, and the failure to name T as the victim in the information does not constitute prejudicial error. The judgment and sentence of the district court is affirmed.

CARDINE, Justice, specially concurring, with whom TAYLOR, Justice, joins.

I concur in the court's opinion, except that I would overrule *Walker v. State*, 847 P.2d 542 (Wyo.1993), which held it was reversible error to fail to name in the criminal complaint the victim of a sexual assault. This does not mean that the defendant not be informed of the name of his accuser; it sim-

ply means that he has no right to learn the victim's name from the criminal complaint.