**Scott Bradley LOWSETH, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 93–184.

Supreme Court of Wyoming.

June 2, 1994.

Leonard D. Munker, State Public Defender, Deborah Cornia, Asst. Public Defender, Gerald M. Gallivan, Director, Defender Aid Program, and Robert M. Vang, Student Intern, for appellant.

Joseph B. Meyer, Atty. Gen., Sylvia Lee Hackl, Deputy Atty. Gen., D. Michael Pauling, Sr. Asst. Atty. Gen., Theodore E. Lauer, Director, Prosecution Assistance Program, and Lori K. Bohlender, Student Intern, for appellee.

Before MACY, C.J., and THOMAS, CARDINE, GOLDEN and TAYLOR, JJ.

CARDINE, Justice.

A Sweetwater County jury convicted Scott Lowseth (Lowseth) of aggravated assault stemming from an armed standoff with Sweetwater County Sheriff's officers. In this appeal, Lowseth seeks reversal of his conviction, arguing: (1) six of the written jury instructions were never returned to the trial court, (2) the trial court lacked jurisdic-

tion due to a defective criminal information, and (3) the trial court improperly refused to further instruct the jury during its deliberations.

We affirm.

Lowseth presents the following arguments:

I. The failure of the clerk of court to deliver six (6) written jury instructions to the trial court with the jury verdict, as required under Wyoming Statute 7–11–201(a)(vi), constituted plain error.

II. The trial court lacked jurisdiction over the defective information and the State cannot use a bill of particulars to amend a criminal information, where the bill of particulars changed the nature of the crime.

III. A defendant cannot be convicted of using an "actual threat of physical injury during the act of employing a deadly weapon," when the trial court fails to instruct the jury on the meaning of "threatens to use," after the jury asks for additional instruction.

### I. FACTS

During the afternoon and evening of June 16, 1992, Lowseth and his boss went to two bars where they consumed a number of mixed drinks and beers. Later that evening, at around midnight, Lowseth and his boss went to Lowseth's trailer, where they continued drinking. At approximately 2:00 a.m. on June 17, 1992, Lowseth began shooting his .357 colt revolver inside his trailer. Lowseth, distraught over his father's recent death, would aim the gun at himself and then move the gun before firing. Around 5:45 a.m., Lowseth phoned 911 and reported that shots had been fired in his trailer. Several sheriff officers were dispatched as well as the county's Tactical Response Team.

Around 6:40 a.m. that morning, the negotiator for the Tactical Response Team contacted Lowseth using a cellular phone. During these phone conversations with the negotiator, Lowseth made a number of expletive-filled statements including,

I can see them [expletive] out there with those rifles and those scopes. I've got

more than they have in here. I've got more guns than they've got.

Later that morning, Sweetwater County Sheriff, Gary Bailiff (Sheriff Bailiff), noticed Lowseth peering out through a kitchen window. Around that same time, Sheriff Bailiff summoned Officer Barneski to the sheriff's position. Just before Officer Barneski arrived at Sheriff Bailiff's position, at approximately 8:30 a.m., Sheriff Bailiff heard and saw three shots come out Lowseth's kitchen window and kick up dirt. At the same time, Officer Barneski, while trying to get to Sheriff Bailiff, crawled through a flower bed and over a trailer hitch in an adjacent lot. While climbing over the trailer hitch, Officer Barneski heard two shots and then immediately heard two bullets pass within two to ten feet of him. Officer Barneski then quickly took cover next to Sheriff Bailiff.

After conferring with Sheriff Bailiff, Officer Barneski ordered another officer to shoot tear gas into Lowseth's trailer. Lowseth exited his trailer and was subdued by several officers after the tear gas filled his trailer. The officers discovered a substantial arsenal inside Lowseth's trailer, including two pistols, a revolver, a shotgun and an ample supply of ammunition.

On June 18, 1992, an information was filed charging Lowseth with aggravated assault, which stated:

Lowseth threatened to use a drawn deadly weapon on officers of the Sweetwater County Sheriff's office; contrary to Wyoming Statute § 6–2–502(a)(iii), 1977, as amended * * *.

An affidavit attached to that information stated that Lowseth had fired three shots at Sheriff Bailiff but did not mention any shots fired at Officer Barneski.

On February 3, 1993, after a number of pre-trial hearings concerning Lowseth's competency to stand trial and on motions to dismiss the information, and after several continuances were granted to Lowseth, Lowseth's counsel moved to withdraw. Lowseth's counsel was permitted to withdraw. The State obtained a continuance from this court.

On March 8, 1993, Lowseth's new counsel moved for a bill of particulars asking for the identity of the specific officer whom Lowseth had allegedly threatened. On March 15, 1993, at a hearing on the motion for bill of particulars, the State, for the first time, explained that Officer Barneski was the officer who Lowseth was charged with threatening and that the manner of the threat was the firing of a loaded revolver. The trial court ordered the State to provide a bill of particulars naming the individual officer allegedly threatened by Lowseth and describing the precise manner of the alleged threat. No written bill of particulars appears in the record.

The trial began on March 30, 1993; and, at the close of Lowseth's case, the court read all the instructions to the jury. During deliberations the jury asked the trial court: "In an aggravated assault charge, does the defendant have to see the victim?" The court replied: "I am not permitted to instruct you further." The jury returned a verdict of guilty of aggravated assault. After the jury was dismissed, the clerk of court went to the jury room to collect the written instructions but found that six instructions were missing. Those written instructions were never located, but the court reproduced them for purposes of the record from the transcript and unsigned copies.

## II. DISCUSSION

### A. Instructions

■ Lowseth first argues that the trial court committed plain error because six of the written instructions were not returned with the verdict into the court in violation of W.S. 7–11–201(a)(vi) (1987), which provides:

Before the argument of the case is begun, the court shall immediately, and before proceeding with other business, charge the jury. The charge shall be reduced to writing by the court, if either party request [requests] it. No charge or instruction provided for in this section, when written or given, shall be orally qualified, modified or explained to the jury by the court. *All written charges and instructions, shall be taken by the jury in their retirement and returned with their verdict into court, and shall remain on file with the papers of the case.* [emphasis added]

Lowseth does not argue that the trial court failed to provide the jury with all the written instructions for its deliberations nor that the jury did not have all the instructions during deliberations. Instead, Lowseth argues that this court must reverse his conviction and remand for a new trial because six written instructions were not returned to the court with the verdict. This claim is premised on our recent decision in *Rissler & McMurry v. Snodgrass*, 854 P.2d 69 (Wyo.1993), where we held that a trial court had committed plain error when it violated W.S. 1–11–209 (1988) by answering a written question presented to it by the jury during deliberations without reporting it on the record and in open court. *Id.* at 70–71.

As Lowseth recognizes, because this alleged error was not brought to the attention of the court, we limit our review to a search for plain error. *State v. Keffer*, 860 P.2d 1118, 1137 (Wyo.1993). The statute is mandatory: "All written charges and instructions, *shall* be * * * returned with their verdict into court * * *." The reasons for this requirement are twofold: First, to assure that the jury took all the written instructions with them to deliberation, and secondly, to preserve the written instructions for appeal. Clearly, all the written instructions were not returned with the verdict convicting Lowseth. Peering through our "plain error spectacles," however, we find no substantial right of Lowseth's to be adversely affected. *Frenzel v. State*, 849 P.2d 741, 746 (Wyo.1993).

The trial transcript demonstrates that the trial court read each of the missing instructions to the jury accurately before the jury retired to deliberate. Both counsel agreed at argument that all of the written instructions, including the missing six, were given to the jury and taken to the jury room. Whatever the cause for the loss of six instructions, the fact is that the clerk of court was able to reproduce each of the missing instructions for the record on appeal. The purposes of W.S. 7–11–201(a)(vi) providing for the giving of instructions to the jury are: to require that the trial court charge the jury by read-

ing the written instructions to it; that the jury have the written charge available during its deliberations; and that the charge (instructions) be available and a part of the record for review on appeal. Each of the purposes was accomplished in this case. Therefore there was no plain error that would require reversal.

Lowseth also argues that *Bearpaw v. State*, 803 P.2d 70 (Wyo.1990) requires a new trial because a necessary part of the record is absent. In *Bearpaw*, we reversed a conviction and remanded it for a new trial because several portions of the trial, *i.e.*, opening statements, voir dire, the instruction conference, and closing arguments, were not made available for the appellate record and therefore it could not be determined whether the accused received a fair trial. *Id.*, at 78. The circumstances of *Bearpaw* do not exist here. As we stated above, all of the written jury instructions were reproduced for our review, and Lowseth does not challenge their accuracy. Thus, *Bearpaw* is inapplicable.

### B. Identity of the Victim

▉ Lowseth argues next that the trial court lacked jurisdiction because the information failed to identify the alleged victim and, he asserts, the allegedly defective information cannot be cured through a bill of particulars. He premises this claim on *Walker v. State*, 847 P.2d 542 (Wyo.1993), which he claims held that a trial court lacks jurisdiction where the charging document fails to identify the victim.

In *Walker* the accused was charged with two counts of indecent liberties in a criminal complaint and then later in an information. The identities of the alleged victims were not provided in either the criminal complaint or the information. Subsequently, at a preliminary hearing, the accused's counsel demanded the alleged victims' identities, but the prosecutor refused to give more than their initials. The trial court sustained the prosecutor's action. At the accused's arraignment, his counsel again demanded the victims' identities and was rebuffed. The accused then demanded the victim's identities through a motion for a bill of particulars, after which the trial court issued a discovery order. The

prosecutor continued to resist divulging the identities until specifically ordered to do so by the trial court. After the trial court's order, the prosecutor divulged the victims' identities solely to the accused's counsel. Finally, the identities were fully disclosed in the instructions to the jury. *Walker*, 847 P.2d at 544.

In *Walker*, a majority (three justices) of this court found reversible error because the prosecution, with some help from the trial court, actively withheld the names of the victims. That majority of justices, however, arrived at its decision for different reasons. Two justices reasoned that the trial court lacked jurisdiction because the information failed to name the victims and thus was fatally defective. The third justice, however, premised his finding of reversible error on the court's constitutional supervisory power found at Art. 5, § 2 of the Wyoming Constitution. Therefore, in *Walker* a majority of this court held, solely, that there was reversible error. Lowseth is incorrect in stating that *Walker* stands for the proposition that a trial court lacks jurisdiction when the charging document fails to name the victim or victims.

On March 9, 1994, this court, in *McDermott v. State*, 870 P.2d 339 (Wyo.1994), affirmed a conviction despite the fact that the victim's name did not appear on the charging document. In so holding, we said:

> Since McDermott had actual knowledge of the identity of the victim, there could be no prejudice to him because of the failure of the information to incorporate the victim's name. Consequently, we hold no error can be claimed under *Walker*.

*Id.* at 348.

This case differs from both *Walker* and *McDermott* because the information here provided at least a general identity of the victim—"officers of the Sweetwater County Sheriff's Office." Since the information specifically informed Lowseth that the alleged victim was an officer in the Sweetwater County Sheriff's Office and the State, upon request, clarified which officer several weeks before trial, the fact that the information failed to specifically include Officer Barneski's name did not prejudice Lowseth. *McDermott*, at 348.

## C. Further Instructions

In his final claim, Lowseth argues that the trial court committed plain error when it failed to further instruct the jury on the meaning of the phrase "threatens to use" when, during deliberations, the jury asked: "In an aggravated assault charge, does the defendant have to see the victim?" Lowseth claims that since the jury asked this particular question, they were confused as to what constitutes "threatens to use," and therefore, the court should have further instructed the jury on the meaning of "threatens to use."

Concerning claims of error involving jury instructions, we have said,

[A] trial court's ruling on an instruction will not constitute reversible error absent a showing of prejudice, and prejudice will not be said to result unless it is demonstrated that the instruction confused or misled the jury with respect to the proper principles of law.

*DeJulio v. Foster*, 715 P.2d 182, 186 (Wyo. 1986) (citing *Cervelli v. Graves*, 661 P.2d 1032 (Wyo.1983)).

Instruction No. 7 provided:

The phrase "threatens to use" as a element of the offense of aggravated assault, requires proof of an actual threat of physical injury during the act of employing a deadly weapon.

The language in this instruction, which was offered by Lowseth over the prosecutor's objection and given by the court, is taken directly from *Johnston v. State*, 747 P.2d 1132, 1134 (Wyo.1987). It is an accurate statement of law approved by this court and is not confusing.

As Lowseth acknowledges, because he failed to object to the trial court's refusal to further instruct the jury after its inquiry, we review this claim for plain error only. *Johnston*, 747 P.2d at 1133–34. The jury's question—"In an aggravated assault charge, does the defendant have to see the victim?"—is not one which required the trial court to apply some clear and unequivocal rule of law, *e.g.*, where the trial court failed to instruct on the necessary elements of the crime. *See Vigil v. State*, 859 P.2d 659, 662 (Wyo.1993). In addition, Instruction No. 7 accurately reflects the law and, from the question posed by the jury, it is not clear that the jury was confused by Instruction No. 7; rather, it appears that the jury sought an additional, albeit unnecessary, instruction. Therefore, we find no plain error because Lowseth has not demonstrated violation of a clear and unequivocal rule of law nor has he shown prejudice or that the jury was confused or misled by Instruction No. 7.

## III. CONCLUSION

Lowseth has not demonstrated that the criminal information's failure to include a specific victim prejudiced his ability to defend. In addition, we find no plain error in the failure of the jury to return six of the written jury instructions nor in the court's refusal to further instruct the jury during deliberations.

We affirm.