John A. TAYLOR, Appellant (Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 97–215.

Supreme Court of Wyoming.

May 26, 2000.

Representing Appellant: Sylvia L. Hackl, State Public Defender; Donna Domonkos, Appellate Counsel; Karl Linde, Assistant Appellate Counsel; and T. Alan Elrod, Assistant Appellate Counsel.

Representing Appellee: William U. Hill, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Georgia L. Tibbetts, Senior Assistant Attorney General.

* Chief Justice at time of oral argument; retired

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN, and TAYLOR,* JJ.

TAYLOR, Justice, Retired.

Following a bench trial, appellant was found guilty of possession of a deadly weapon with intent to unlawfully threaten the life or physical well-being of another in violation of Wyo. Stat. Ann. § 6–8–103 (Lexis 1999). Appellant challenges the sufficiency of the charging information, the constitutionality of the warrantless seizure of firearms and ammunition from his home/business, and the sufficiency of the evidence pointing to intent at trial. We affirm in part and reverse in part.

## I. ISSUES

Appellant, John A. Taylor (Taylor), presents four issues which, in essence, are reiterated by appellee, State of Wyoming:

1. Whether the trial court lacked jurisdiction over this case because neither the information nor its supporting documents specifically identified the victim, the State actively withheld the victim's identity, and the appellant did not have actual notice of who the victim was?

2. Whether the evidence presented at trial was insufficient as a matter of law to prove that appellant had the intent to threaten another under Wyo. Stat. § 6–8–103 where appellant, while possessing a non-concealed weapon, walked into the Lander City Attorney's offices, served an attorney with documents from a civil action, said "You've had your fun, now it's my turn," and walked away?

3. Whether Lander police officers unconstitutionally seized personal items from appellant's home that were not described in the search warrant, and whether these items should have been returned to appellant when he moved for their return pursuant to W.R.Cr.P. 41(e)?

4. Whether the district court imposed an illegal sentence when it ordered a for-

November 2, 1998.

feiture of appellant's property when this punishment is not mandated under Wyo. Stat. § 6–8–103?

## II. FACTS

The series of events which led to Taylor's arrest began when Taylor threw tree branches into his neighbor's yard and was subsequently cited for littering. In response, Taylor filed a civil suit against various entities, including the City Attorney for Lander. On Friday, November 1, 1996, the district court granted the City Attorney's motion for summary judgment, and ordered Taylor to pay costs and attorney fees for filing a frivolous suit. On Monday, November 4, 1996, Taylor, who had represented himself in the civil suit, visited the offices of Mr. Gingery, the assistant city attorney, and Mr. Sollars, Mr. Gingery's supervisor.

At approximately eight o'clock that morning, Gingery and Sollars were having a cup of coffee in the office kitchen when they saw Taylor's car approach. Stating something to the effect that, "he didn't want to deal with John that morning," Sollars went into his office. Gingery walked down the hallway and met Taylor in the lobby. Taylor, carrying a weapon resembling an Uzi strapped to his shoulder, handed Gingery two documents, and stated, "You've had your fun; now it's my turn." Taylor then left the office.

The documents were two "pleadings" filed with the district court and bearing the number of the dismissed civil lawsuit. One was titled "Declaration of War" (Declaration) and the other, "Notice of Lack of Jurisdiction" (Notice). The Declaration, in pertinent part, stated that "[a] state of war now exists between John A. Taylor and the totalitarian city, state and federal government * * *." The Declaration further threatened retaliation against Taylor's neighbors, stated that no future court summonses would be answered or honored for any reason, and that the exercise of " 'court authority' will be considered an act of aggression." The Notice asserted that Taylor would not answer to any "unconstitutional, totalitarian court."

After Taylor left, Gingery went to Sollars' office and the two read the documents. Gingery then called the police. Officer Cecrle of the Lander Police Department responded to the call at approximately 8:20 a.m., meeting with Gingery and Sollars, both of whom seemed very upset. After hearing the account of Taylor's visit, Officer Cecrle made copies of the Declaration and Notice and notified others of the contents, including Taylor's neighbors named in the Declaration. Officer Cecrle then went to Taylor's home/business at approximately 10:45 a.m. Taylor was in the front yard, but walked quickly to the front door when the officer approached. A few seconds later, Taylor reappeared in the front door, staring at Officer Cecrle. Feeling that it was tactically unsafe to approach any further, Officer Cecrle returned to the police department and attempted to telephone Taylor. Taylor, however, refused to talk. Officer Cecrle then obtained an arrest warrant and a warrant to search Taylor's home/business and car for "an Uzi-type" weapon.

At about 4:30 that afternoon, Taylor was arrested outside his home/business. A search pursuant to the warrant began five or six minutes later. As the officers entered the front door, on a shelf approximately one step away from the door where Taylor had stood looking at Officer Cecrle earlier in the day, lay a loaded "Uzi-type" 9 millimeter semiautomatic pistol. Nearby, officers found two 30–round magazines taped together for quick loading and a bag of loose ammunition for the weapon. The search continued, revealing a loaded AR–15 assault rifle hanging by the back door, with additional ammunition located within steps of the rifle. Proceeding to the bedroom, officers found a .45 Colt Ruger Blackhawk revolver, holster and belt holding rounds of ammunition, a knife sheath and a Bowie knife. At the foot of the bed, additional ammunition for the assault rifle was found. In all, police seized three weapons and approximately 4,179 rounds of ammunition.

The Information charging Taylor with possession of a weapon with intent to unlawfully threaten another did not name a victim, but the supporting affidavit mentioned both Sollars and Gingery. Prior to trial, Taylor moved the district court to dismiss the case

for lack of a named victim or, in the alternative, for a Bill of Particulars. Taylor also moved to suppress and return to him all items seized that were not listed in the search warrant. After a hearing on these motions, the district court denied the motion to dismiss, finding that Taylor had adequate notice of the victim by virtue of the State's witness and exhibit lists and other pleadings on file. The district court also denied the motion to exclude the seized evidence not specifically identified in the warrant.

Following a bench trial in which the prosecution submitted only the first weapon found in the search, the district court found Taylor guilty of one count of possession of a deadly weapon with the unlawful intent to threaten another. He was sentenced to not less than two nor more than four years in the Wyoming State Penitentiary. In addition, the weapons, ammunition, and other evidence seized from Taylor's residence were "forfeited to the City of Lander Police Department for such disposition as the Department finds appropriate." This appeal followed.

### III. STANDARD OF REVIEW

■ The factual findings of the district court at the hearing on the motion to suppress are binding on our Court unless they are clearly erroneous. *Callaway v. State,* 954 P.2d 1365, 1369 (Wyo.1998). The constitutionality of a particular search or seizure is a question of law that we review *de novo. Id.; Burgos–Seberos v. State,* 969 P.2d 1131, 1133 (Wyo.1998). Similarly, whether the sufficiency of an information passes constitutional muster under the Sixth Amendment to the United States Constitution and Wyo. Const. art. 1, § 10 is a question of law subject to *de novo* review. *See Vernier v. State,* 909 P.2d 1344, 1350–51 (Wyo.1996). In reviewing sufficiency of the evidence claims, we determine whether the evidence is adequate to support a reasonable inference of guilt beyond a reasonable doubt, viewing the evidence in the light most favorable to the state. *Rogers v. State,* 971 P.2d 599, 601 (Wyo.1999).

### IV. DISCUSSION

#### A. SUFFICIENCY OF THE INFORMATION

■ Taylor claims the charging information was insufficient because it did not identify the victim of the alleged act. Taylor further contends that the State actively concealed the identity of the victim by refusing to designate either Gingery or Sollars as the victim of the crime. He concludes that under our holding in *Walker v. State,* 847 P.2d 542 (Wyo.1993), the omission of a specific victim's name in connection with the deliberate conduct of the prosecution constitutes reversible error. In response to Taylor's motion to dismiss or for a Bill of Particulars, the prosecution stated that "Defendant has actual knowledge of the identity of the victim." The district court agreed, finding that the information and pleadings in this case adequately informed Taylor of the charges against which he must defend.

■ In *Walker,* we held that the failure to inform the defendant of the identity of the victims in two counts of indecent liberties until the end of the presentation of evidence at trial was reversible error. *Walker,* 847 P.2d at 545. Later decisions, however, have clarified that it is not merely the lack of the victim's identity, but the prejudice suffered by the defendant which determines whether reversal is warranted on the basis of insufficiency of the information. *Lowseth v. State,* 875 P.2d 725, 728 (Wyo.1994); *McDermott v. State,* 870 P.2d 339, 348 (Wyo.1994).

■ An information is sufficient when it contains the elements of the offense charged, fairly apprises the defendant of the charges against which he must defend, and affords protection against the risk of double jeopardy in the event of conviction. *Vernier,* 909 P.2d at 1351–52. Taylor was charged with one count of violating Wyo. Stat. Ann. § 6–8–103, which provides, in relevant part:

> A person who knowingly possesses * * * a deadly weapon with intent to unlawfully threaten the life or physical well-being of another * * * is guilty of a felony punishable by imprisonment for not more than five (5) years, a fine of not more than one thousand dollars ($1,000.00), or both.

The amended information provided:

1. On or about November 4, 1996;

2. In Fremont County, Wyoming;

3. The defendant, John A. Taylor;
4. ·Knowingly did possess or transport;
5. A deadly weapon;
6. With intent to unlawfully threaten the life or physical well-being of another[.]

The affidavit completed by Officer Cecrle in support of the search warrant which recounts Taylor's visit to the City Attorney's office concludes: "Sollars and Gingery stated that they felt that the 'Declaration of War' and the display of the weapon by TAYLOR were threatening and were concerned about their safety." Officer Cecrle's report reiterated that both Sollars and Gingery "were visibly shaken and worried about their safety," and stated that the documents handed to Gingery "threatened public employees and [Taylor's] neighbors." The State's Witness and Exhibit Lists named both Gingery and Sollars as potential witnesses along with others.

Taylor claims that because he was charged with only one count, his knowledge of the identity of two possible victims was not sufficient notice to prepare his defense. We disagree. The information provided Taylor with notice of the need to provide a defense to Wyo. Stat. Ann. § 6–8–103 and Taylor knew the names of the two possible victims. At the motion hearing, the State confirmed that both Gingery and Sollars were considered victims of the crime, stating: "The State's position is that this defendant was upset with the City Attorney's office, with the system as a whole. He went to an office where Mr. Sollars and Mr. Gingery conduct the business of the City Attorney. The individual that he confronted in that office was Mr. Gingery."

■ Thus, the question is not whether Taylor was aware of the identity of the victims, but whether the State could include two victims in one count. We find no prejudice to Taylor by the State's actions in this case. The charged conduct of Taylor was a single transaction with the alleged intent to unlawfully threaten those in a position of authority at the City Attorney's office. Two people were in such a position. Although the prosecutor could have charged two counts of the crime, he chose to limit the case to a single count. *See Vigil v. State*, 563 P.2d 1344, 1353 (Wyo.1977) (there is no constitutional prohibition against legislation which provides for multiple crimes arising from single acts against multiple victims). Thus, to prove the charge, the State needed to demonstrate specific intent against at least one, if not both, of the victims.

Taylor's defense rested solely on the contention that the evidence could not establish his intent to unlawfully threaten anyone. Given this position, Taylor fails to demonstrate how the identification of two possible victims hindered, altered, or unduly burdened his defense. *State v. Kyles*, 221 Conn. 643, 607 A.2d 355, 361–62 (1992); *State v. Bradley*, 811 S.W.2d 379, 381–82 (Mo.1991). Moreover, this is not a case in which the presence of two victims presented a possibility of a non-unanimous jury verdict. *See State v. Stephens*, 93 Wash.2d 186, 607 P.2d 304, 305–06 (1980) (charges of assault against two victims in the disjunctive not harmless error because jurors could have found guilt if six jurors convicted for the assault of one victim, and six the other). Taylor's waiver of his right to a jury resulted in there being but one person sitting in judgment of Taylor's guilt or innocence. Since Taylor fails to show prejudice in the State's identification of two victims in one count, we find no jurisdictional defect in the information and no error in the district court's denial of a motion for a Bill of Particulars.

### B. SUFFICIENCY OF THE EVIDENCE

■ In his second issue, Taylor argues that the evidence at trial was insufficient to prove he carried the firearm into the City Attorney's office with the intent to threaten the life or physical well-being of another. Recognizing that we must view the evidence in the light most favorable to the State, Taylor maintains that the only facts substantiating his intent were: (1) his possession of a weapon which hung from a shoulder strap (which Taylor did not wave, nor did he place his hand on the trigger); (2) while serving "court documents;" (3) his statement that it was now his turn to have fun; and (4) walking away. He contends that this evidence is insufficient to show that he intended to threaten to use the weapon to harm anyone.

This argument fails to account for significant facts developed at trial.

"The mind of an alleged offender may be read from his acts, his conduct, his words and reasonable inferences which may be drawn from the circumstances of the case. To hold otherwise would create an impossible burden in a case requiring specific intent."

*Lopez v. State,* 788 P.2d 1150, 1153 (Wyo. 1990) (*quoting Schiefer v. State,* 774 P.2d 133, 135 (Wyo.1989)).

Taylor's renter testified that Taylor was very angry over the dismissal of his civil case, and that he had never seen Taylor wearing the assault weapon until Taylor intentionally armed himself for his trip to the City Attorney's office. The "court documents" referenced by Taylor were, in fact, a Declaration of War presented to Gingery while Taylor's hand rested on the stock of his weapon. The contents of the Declaration written by Taylor stated that "[a] state of war now exists between John A. Taylor and the totalitarian city, state and federal government;" that any "exercise of 'court authority' will be considered an act of aggression;" and the Notice stated that "[t]here is not [sic] doubt as to the course of action left."

Taylor contends that the contents of the documents cannot be evidence of a threat since Gingery did not read the documents until Taylor left the building, and similarly claims that the presence of the gun, without some threat to use it immediately, is not evidence of a threat. This argument mistakenly equates the element of Taylor's intent to threaten with the completion of an actual threat. In this case, the evidence was sufficient to prove beyond a reasonable doubt that the circumstances surrounding Taylor's actions and words constituted an intent to unlawfully threaten Gingery.

## C. SUPPRESSION AND RETURN OF ITEMS SEIZED BY LAW ENFORCEMENT

█ Taylor claims the execution of the search warrant exceeded constitutional limits when officers seized weapons and ammunition not specified in the warrant violating the Fourth Amendment to the United States Constitution and Wyo. Const. art. 1, § 4.

Taylor also challenges the district court's denial of his request to have these items returned.

█ Taylor acknowledges that objects in plain view may be seized, assuming there is probable cause to associate the property with criminal activity, even though those items are not listed in the warrant. *Jones v. State,* 902 P.2d 686, 692 (Wyo.1995); *McDermott,* 870 P.2d at 345. Taylor maintains, however, that the plain view doctrine does not apply in this case. He argues that once the officers located the object of the search, they were not lawfully entitled to continue to search the premises. In the alternative, Taylor argues that if the officers were entitled to be on the premises when they saw the weapons and ammunition, they had no probable cause to believe that these items were associated with criminal activity. We agree with Taylor that the purpose of the search was completed when the first weapon was found at the front door, and, therefore, the officers had no authority to continue a search of the property.

█ In *Horton v. California,* 496 U.S. 128, 136, 110 S.Ct. 2301, 2308, 110 L.Ed.2d 112 (1990), the United States Supreme Court set forth three requirements for valid seizure of evidence in plain view: (1) the officer must not have violated the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed; (2) the incriminating character of the evidence must be immediately apparent; and (3) the officer must have a lawful right of access to the object itself. "[T]he 'plain view' doctrine cannot be used to expand the scope of a legal search-there must be 'scrupulous adherence' to the requirement that the search be limited to the time and *place necessary to find the items listed on the warrant.*" *United States v. Menon,* 24 F.3d 550, 560 (3rd Cir.1994) (*quoting Horton,* 110 S.Ct. at 2309) (emphasis added).

█ Where a warrant describes only a specific object, and it is found, "the purposes of the warrant have been carried out, [and] the authority to search is at an end." 2 Wayne R. LaFave, *Search and Seizure,* § 4.10(d) at 678 (1996); *see also United States v. Feldman,* 366 F.Supp. 356, 364

(D.Hawai'i 1973); *United States v. Highfill,* 334 F.Supp. 700, 701–02 (E.D.Ark.1971); *People v. Muniz,* 198 Colo. 194, 597 P.2d 580, 582 (1979); *Awaya v. State,* 5 Haw.App. 547, 705 P.2d 54, 59–60, *cert. denied,* 67 Haw. 685, 744 P.2d 781 (1985); and *State v. Starke,* 81 Wis.2d 399, 260 N.W.2d 739, 747 (1978).

> The Fourth Amendment directly expresses that "no Warrants shall issue, but upon probable cause, * * * *particularly describing the place to be searched, and the* * * * *things to be seized."* (Emphasis [in original].) A general search is not permitted; officers executing a warrant are authorized to seize only the property described. * * * In *Marron v. United States,* 275 U.S. 192, 196, 48 S.Ct. 74, 76, 72 L.Ed. 231 (1927), the United States Supreme Court shed this light on the particularity requirement:
>
> > "The requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant."

*Hall v. State,* 911 P.2d 1364, 1369 (Wyo. 1996). In this case, the search warrant stated the officers were authorized to search Taylor's car or business for property, "namely: gun that resembles an 'Uzi.'"

At the hearing on the motion to suppress the seized guns and ammunition apart from the first weapon discovered by the officers, Officer Cecrle conceded that none of the other items seized could be seen from the place where the first gun was found. It was also clear from the affidavit supporting the search warrant that only one "Uzi-type" weapon was used by Taylor, and only one was listed on the warrant itself. The State's attempts to justify the continuation of the search are not convincing.

■ At the motion hearing, the following explanation was proffered by Officer Cecrle:

> It's standard procedure in police searches, when you find a piece of evidence that appears to match the description but is not completely or totally convincing that that is the only thing that could match that description, you continue to search and make sure that there is not a second or third item in that premise that may also resemble—in other words, there may have been two weapons that were identical other than the color of the strap. So it became incumbent on us to continue to search in case there were other weapons.

Notable by its absence is any explanation for the officer's belief that the first gun resembling an Uzi was not "completely or totally convincing," and, further, "there may have been two weapons that were identical * * *." A constitutional search is based on probable cause; there must be some valid reason to continue the search after the object identified in the warrant is found. *See Callaway,* 954 P.2d at 1370 (deputy sheriff had probable cause to believe that the other stolen bottle was secreted at some unspecified location within the appellant's automobile, and he could legally continue his search). Otherwise, every search could continue even though the purpose of the warrant had been achieved.

The State cites to *Menon,* 24 F.3d 550 to support the lawfulness of continuing the search after the seizure of the first weapon. In *Menon,* 24 F.3d at 559, a warrant authorized the search of the defendant's office and the desk of a secretary for "[o]riginals and copies of blank invoices bearing the name of Abad Fisheries." During the search of the secretary's desk, an agent discovered a file marked Abad Fisheries. The agent then continued the search and found other incriminating documents. *Id.* The Third Circuit Court of Appeals concluded that it was reasonable for the agent to continue to search the desk after finding the Abad Fisheries file, stating, "[a]ny reasonable agent looking for evidence in a clearly circumscribed area would continue the search until she was certain that no more evidence existed which could not happen until the entire desk was searched." *Id.* at 560. The facts in *Menon,* however, contain a critical distinction. There, the warrant did not describe one particular item, but authorized a search for an *unspecified number* of documents of a certain type. Further, the area searched was "clearly circumscribed," as opposed to the

search in this case, which continued throughout Taylor's property.

The State hypothesizes that the limitation of the search in this case would "require, for example, that officers executing a warrant for marijuana terminate their search immediately upon the discovery of a single joint." This argument ignores the distinction between specified property and property of a specified character:

> " '[W]here the purpose of the search is to find specific property, it should be so particularly described as to preclude the possibility of seizing any other. On the other hand, if the purpose be to seize, not specified property, but any property of a specified character, which, by reason of its character and of the place where and the circumstances under which it may be found, if found at all, would be illicit, a description, save as to such character, place, and circumstances, would be unnecessary and, ordinarily, impossible; as, for instance, where the search is ordered for dies for the counterfeiting of money, or for opium, or gambling devices, or lottery tickets, or intoxicating liquors, alleged to be held in possession unlawfully, and the same is true though the illegality may consist in the intended use rather than the mere possession of the property.' "

*State v. Weber,* 548 So.2d 846, 848 (Fla.App. 1989) (*quoting Carlton v. State,* 449 So.2d 250, 252 (Fla.1984) and *North v. State,* 159 Fla. 854, 857, 32 So.2d 915, 917 (1947)).

Were there cause to believe that more than one gun resembling an Uzi might be found on Taylor's property, then the warrant should have so stated. It did not. Neither is this a case where a "one-means-more" inference is permissible. *See* 2 Wayne R. LaFave, *supra,* § 3.7(d) at 390. We find the officers were not entitled to continue the search after finding the item identified in the warrant, and, therefore, they were not lawfully on the premises when the other items came into view. Consequently, the remainder of the seized items should have been suppressed.

 The unlawful seizure of Taylor's property, however, is not grounds for reversal. The only firearm introduced into evidence at Taylor's trial was the first weapon seized—the 9 millimeter semiautomatic assault pistol actually used in the commission of the crime. Because this item was lawfully seized under the warrant, there was no prejudice to Taylor as a result of the failure of the district court to suppress the remaining items, and the conviction is affirmed.

### D. RETURN OF THE WEAPONS AND AMMUNITION

 Having found that, except for the first item seized by the officers, the other items were not lawfully seized, we now turn to Taylor's claim that the district court erroneously failed to return the property at Taylor's request during the suppression hearing. W.R.Cr.P. 41(e) provides, in pertinent part:

> (e) *Motion for return of property.*—A person aggrieved by an unlawful search and seizure * * * may move the court in which charges are pending * * * for the return of the property **on the ground that such person is entitled to lawful possession** of the property.

(Emphasis added.) The State contends that under 18 U.S.C. § 922(n) and (d)(1), Taylor's pending felony charge rendered his possession of the weapons illegal. 18 U.S.C. § 922(n) provides:

> (n) It shall be unlawful for any person who is under indictment for a crime punishable by imprisonment for a term exceeding one year to ship or transport in interstate or foreign commerce any firearm or ammunition or receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

We do not find this provision applicable to Taylor. The record is silent with respect to whether the weapons had been shipped or transported in interstate or foreign commerce. However, we agree that 18 U.S.C. § 922(d)(1) prevented the return to Taylor of the illegally seized items. 18 U.S.C. § 922(d)(1) states that it is "unlawful for any person to sell or otherwise dispose of" any firearm or ammunition to any person who is under indictment or convicted of a crime punishable by imprisonment for a term exceeding one year. Since Taylor's pending

charge fell within the prohibitions of this section, Taylor could not lawfully demand the return of the firearms and ammunition.

The same reasoning applies to Taylor's second request for return of these items at sentencing. As a convicted felon, Taylor was not entitled to possess firearms or ammunition. 18 U.S.C. § 922(g); *see also United States v. Bagley,* 899 F.2d 707, 708 (8th Cir.1990), *cert. denied,* 498 U.S. 938, 111 S.Ct. 343, 112 L.Ed.2d 307 (1990). Therefore, the district court did not err in ordering these items to remain in the possession of law enforcement, subject to Wyo. Stat. Ann. § 7–2–105 (Lexis 1999). We note, however, that at least one item seized, the Bowie knife, does not fall into the category of weapons prohibited by federal law. Therefore, the Bowie knife should be returned.

## V. CONCLUSION

Taylor's conviction is affirmed. The seizure of all firearms and ammunition, except for the first gun, exceeded the scope of the warrant, but the district court's error in denying suppression of these items was harmless. Pursuant to Taylor's request under W.R.Cr.P. 41(e), all items illegally seized that do not fall within the prohibitions of 18 U.S.C. § 922 shall be returned to Taylor.